## KRAUSE v. UNITED STATES.
### No. L-178.

Court of Claims.
June 6, 1932.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a Commissioner, makes the following special findings of fact:

1. On August 1, 1914, the Krause State Savings Bank was incorporated as a banking corporation under the laws of the state of Illinois, with a capital stock of $200,000 and a surplus of $50,000 represented by cash paid in by the stockholders, J. Jacob Krause, plaintiff herein, and his two brothers, J. Henry Krause and John O. Krause, each owning one-third of the stock.

2. In the summer of 1921, J. Henry Krause, acting for himself and for his brothers, John O. Krause and J. Jacob Krause, entered into negotiations with Peter L. Evans, president of the Home Bank & Trust Company, for the consolidation of the two banks. The directors of the Home Bank & Trust Company were willing to consolidate the two banks and were willing that it should be on the basis of five parts of the stock of the consolidated bank, as representing their bank, and three parts, as representing the value of the Krause State Savings Bank, but they were unwilling that three-fifths of the stock should remain in the hands of J. Henry Krause, J. Jacob Krause, and John O. Krause, who, at that time, owned all of the stock in the Krause State Savings Bank, because such a holding would have given them virtual control of the consolidated stock, since the stock of the Home Bank & Trust Company was held by numerous shareholders with comparatively small holdings. At the same time the Krauses were unwilling to consolidate unless, in connection with the consolidation, they were to receive an amount equal to the original capital and surplus of their bank, which was $250,000.

3. Thereafter it was agreed between Peter L. Evans and J. Henry Krause, John O. Krause, and J. Jacob Krause that the two banks should be consolidated, and this agreement was reduced to writing August 1, 1921. A copy thereof appears at pages 13–17 of the petition, and is made part hereof by reference. By the terms thereof the capital stock of the Krause State Savings Bank was to be increased from 2,000 to 3,000 shares, and that of the Home Bank & Trust Company from 5,000 to 8,000 shares, all shares of a par value of $100 each, and that 3,000 shares in the Krause Bank should be exchanged for 3,000 shares in the Home Bank; all of the assets of the Krause Bank were to become the assets of the Home Bank; the new business was to be conducted under the name of the Home Bank & Trust Company; J. Henry Krause and John J. Krause were to be elected directors of the consolidated bank; J. Henry Krause was to be and remain in the employ of the Home Bank for a period. of not less than two years, and John J. Krause was to be and remain in its employ for a period of not less than one year; the real estate of the Krause Bank was to be conveyed to the Home Bank; and the resolutions providing for the consolidation were to be passed on or before October 1, 1921.

4. On the same date, to wit, August 1, 1921, the aforesaid parties, J. Henry Krause, John O. Krause, John J. Krause, as parties of the first part, and Peter L. Evans, as party of the second part, entered into another written agreement as follows:

"* * * The parties of the first part agree to sell and the party of the second part agrees to purchase on or before October 1st, 1921, six hundred (600) shares of the capital stock of the Home Bank & Trust Company after consolidation with the Krause State Savings Bank at two hundred fifty ($250.00) dollars per share;

"The parties of the first part hereby grant

unto the party of the second part the option to purchase four hundred (400) additional shares of the capital stock of the Home Bank & Trust Company after consolidation with the Krause State Savings Bank on or before October 1, 1921, at two hundred fifty ($250.00) dollars per share."

5. On September 12, 1921, J. Henry Krause, John O. Krause, and J. Jacob Krause by written agreement therewith constituted the Union Trust Company of Chicago their trustee conveying to said company as trustee their 3,000 shares of stock in the Krause State Savings Bank, each receiving in exchange therefor the trustee's promissory note for $83,333.33⅓, the three notes amounting to $250,000, payable on or before five years from date.

The trust agreement empowered the trustee to exchange said shares of the Krause State Savings Bank for a like number of shares of the Home Bank & Trust Company, and to sell and deliver to Peter L. Evans from 600 to 1,000 shares of stock in the Home Bank & Trust Company at $250 a share, in accordance with the agreement made with Mr. Evans, and to deliver to the three Krauses the remaining 2,000 shares.

• 6. The directors unanimously approved the proposed consolidation and called a meeting of the stockholders for the purpose of having them act upon it.

Meetings of the stockholders of the respective banks were held September 14, 1921, after due notice, at which the proposed consolidation was approved, and the stock increases provided for in said written proposal of consolidation were authorized.

7. Thereupon Peter L. Evans, as president of the Home Bank & Trust Company, interviewed the different stockholders and directors of the Home Bank & Trust Company and offered this stock for sale and as a result thereof received subscriptions for the issue of 1,000 shares of stock as provided in the agreement of August 1, 1921, and as trustee for them opened an account in the Home Bank & Trust Company depositing therein the payments made by the subscribers for said stock. All of the old stockholders of the Home Bank & Trust Company did not subscribe for the issue of 1,000 shares, and some of the subscribers were not at the time of the subscription stockholders of the Home Bank & Trust Company. On October 1, 1921, there was deposited in this account $153,000, and on October 6, 1921, $256,250, being $6,250 in excess of the amount of stock covered by said agreement. The amount of $6,250 was subsequently returned to one of the subscribers.

8. On Monday, October 3, 1921, the consolidated bank opened for business. The moving of the physical assets of the Krause State Savings Bank, such as books, papers, deposit boxes, etc., had begun at 8 o'clock in the evening of Saturday, October 1, 1921.

9. On September 30, 1921, Peter L. Evans made out a certificate of stock of the Home Bank & Trust Company for the amount of 1,000 shares in favor of the Union Trust Company as trustee, which certificate was dated October 1, 1921. Peter L. Evans on September 30, 1921, delivered this stock certificate to J. Henry Krause for the purpose of securing the indorsement of the Union Trust Company, so that these 1,000 shares might be split up and issued to the subscribers referred to in finding 7, supra, in the respective amounts to which they had subscribed. J. Henry Krause took the certificate to the Union Trust Company, secured the assignment in blank by it on September 30, 1921, and returned it to Peter L. Evans on the same day. All the said shares, dated October 3, 1921, were issued by the Home Bank & Trust Company to the respective subscribers. On October 4, 1921, Peter L. Evans remitted to the Union Trust Company as trustee for the Krauses, $200,000 and on October 7, 1921, the balance of $50,000, in accordance with the consolidation agreement, the Krauses' trustee receiving as a part of the same transaction 2,000 shares of the capital stock of the Home Bank & Trust Company, 30 shares of which the trustee immediately transferred directly to the Krauses in equal proportions, to qualify them as directors. On October 1, 1921, the Krause State Savings Bank conveyed to the Home Bank & Trust Company all of its real estate and personal property, both tangible and intangible. All tangible personal property, books of account, etc., were on that day moved to the bank building of the Home Bank & Trust Company, and the consolidated bank commenced business in possession of all of the assets of the Krause State Savings Bank on October 3, 1921.

The market value of the shares of stock in either bank before their consolidation is not shown by the evidence.

10. Plaintiff filed his income tax return for the calendar year 1921 with the collector of internal revenue at Chicago, Illinois, on March 15, 1922, on which he showed a net taxable income of $30,067.18 and paid a tax thereon of $2,571.39. Thereafter the Com-

missioner of Internal Revenue held that, by reason of the aforesaid consolidation and the receipt by the trustee of the aforesaid $250,000, plaintiff had received additional income in the sum of $55,520.20 upon the assumption that there had been a sale by the three Krauses of 1,000 shares of stock of the Krause State Savings Bank for $250,000 which had an original cost of $83,333.33⅓, and he found a further addition to the income of $1,446.09, and thereupon assessed an additional tax of $20,370.62. Thereafter, on April 13, 1926, the plaintiff paid said assessment to the collector of internal revenue at Chicago, Ill., and on April 16, 1926, interest of $4,517.60, the total amount of principal and interest being $24,888.22. Plaintiff made no objection to the additional item of income of $1,446.09, which increased the amount of plaintiff's taxable income to $31,513.27, resulting in a net addition to tax of $348.48 which, with interest to April 13, 1926, amounted to $425.94.

11. October 25, 1928, plaintiff filed with the collector of internal revenue at Chicago, Ill., a claim for refund of taxes for the calendar year 1921, in the amount of $24,101.88, and on June 4, 1929, he filed with the said collector an amended and supplemental claim for refund for the same amount as stated in the claim filed October 25, 1928. The basis of the first claim was that 1,000 shares of stock of the Home Bank & Trust Company were sold in 1921 by the Union Trust Company as trustee for plaintiff and that the profit realized on said sale was taxable to the trustee and not to plaintiff, and as to the amended claim the basis was that the tax in question resulted from an additional assessment for the year 1921, based on the conclusion of the Commissioner of Internal Revenue that the Union Trust Company, as trustee, realized a taxable gain from the disposition of the thousand shares of stock of the Home Bank & Trust Company, and that one-third of the amount so realized was properly to be included in each taxpayer's income for that year; that pursuant to an agreement for the reorganization and consolidation of the Home Bank & Trust Company and the Krause State Savings Bank, the trustee deposited with the Home Bank & Trust Company 2,970 shares of stock of said Krause State Savings Bank and received in exchange therefor 1,970 shares of stock of said bank and $250,000 in cash; that this was the transaction out of which the taxable net gain in question was supposed to arise and that no taxable net gain resulted therefrom; that the terms of the reorganization and consolidation of said bank were agreed upon August 1, 1921, between the Krauses, who were owners of all the stock of the Krause Bank, and one Peter L. Evans, president of and representing the Home Bank & Trust Company; that the terms of the agreement were that the capital stock of the Home Bank should be increased from 5,000 to 8,000 shares; that of the Krause State Savings Bank from 2,000 to 3,000 shares; that the stock of the Krause Bank should be surrendered to the Home Bank & Trust Company, and that 2,000 shares of the stock of the latter bank should be issued to stockholders of the Krause Bank, but the Home Bank & Trust Company should retain 600 shares and should have a right to retain 1,000 shares of its new stock, paying in lieu thereof $250 a share; that this agreement was approved by the directors of the Home Bank & Trust Company and subsequently ratified by the stockholders of the two banks; that the actual reorganization and consolidation were effected October 1, 1921. It further set out that the original 2,000 shares of stock in the Krause State Savings Bank were acquired by the Krause brothers in exchange for all the assets of the Krause State Savings Bank which had at the time a value of $450,000 or more. The Commissioner of Internal Revenue rejected both of said claims for refund on October 10, 1930.

12. The reasonable value of the stock of the Krause State Savings Bank, prior to the consolidation, was $83.33⅓ a share.

C. N. Goodwin, of Washington, D. C., for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The issue in this case is one of fact. The special findings set out the material facts in full.

In 1921 the plaintiff and his two brothers were the sole owners, in equal shares, of the stock of the Krause State Savings Bank, which had a capital stock of $250,000, divided into 3,000 shares. The stockholders of the Krause State Savings Bank, consisting of the plaintiff and his two brothers, agreed to consolidate with the Home Bank & Trust Company, and under this agreement the

stock of the Krause State Savings Bank was to be exchanged for a like number of shares of the Home Bank & Trust Company, share for share.

At the time the consolidation agreement was entered into, the plaintiff and his two brothers agreed to sell to Peter L. Evans, who was president of the Home Bank & Trust Company, 600 shares of the Home Bank & Trust Company, and also gave an option to Evans to purchase 400 additional shares. It is manifest that this agreement could not take effect until after the consolidation, and after the stock of the Home Bank & Trust Company had been delivered to the plaintiff and his brothers. The agreement of sale and option clearly stated "after consolidation." At about this time the plaintiff and his two brothers executed a trust agreement to the Union Trust Company, as trustee, whereby the entire stock of the Krause State Savings Bank was delivered to the trustee to be delivered by it to the Home Bank & Trust Company in exchange for a like number of shares. After the consolidation had been effected, the Home Bank & Trust Company delivered to the trustee 3,000 shares of its stock in exchange for a like number of shares of the stock of the Krause State Savings Bank. In this trust agreement the Krauses fixed the value of the stock of the Krause State Savings Bank at $83.33⅓ a share, and the trustee was authorized and empowered to sell and deliver to Peter L. Evans from 600 to 1,000 shares at $250 a share, in accordance with the agreement made with Evans, and to deliver to the plaintiff and his two brothers the remaining 2,000 shares. After the 3,000 shares had been delivered to the trustee by the Home Bank & Trust Company in exchange for all of the stock of the Krause State Savings Bank, the trustee sold to Evans 1,000 shares at $250 a share, and contemporaneously Evans sold these shares to the stockholders of the Home Bank & Trust Company and others, at $250 a share. The fair market value of the stock was established at the time of acquisition by outsiders.

The Commissioner of Internal Revenue found that the plaintiff and his two brothers had derived a profit, from the sale of the 1,000 shares, of the difference between $83,-333.33⅓ and $250,000, or the sum of $166,-666.66⅔, and that each of the brothers had made a net gain of $55,520.20, and levied an additional tax, which was duly collected. A refund claim was filed and rejected.

The plaintiff contends that he and his two brothers exchanged 3,000 shares of stock of the Krause State Savings Bank for 2,000 shares of the stock of the Home Bank & Trust Company and $250,000 in cash, and therefore there was no taxable gain under section 202 (e) of the Revenue Act of 1921 (42 Stat. 230), which reads as follows:

"Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs [the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of], the money or the fair market value of such other property received in exchange."

However, the facts of the case do not bear out the plaintiff's contention. Their agreement to sell the stock of the Home Bank & Trust Company was to take effect after the consolidation, and was made, not to the Home Bank & Trust Company, but to a third party. The stock of the Home Bank & Trust Company had a readily realizable market value after the consolidation and was actually sold by Evans to the stockholders of his bank and outsiders for the sum of $250 a share, which was $166.66⅔ in excess of the value of the stock for which it was exchanged. It was not a gain made in exchange of stock, but a gain made in the sale of the stock of the consolidated banks after the exchange, which resulted in an excess of value and from which a profit was derived which was taxable.

In our opinion, the Commissioner was correct in making the additional assessment and collecting the tax. The petition is dismissed. It is so ordered.