**CRISPIN et al. v. UNITED STATES.**

**No. 13097.**

United States Court of Appeals,
Ninth Circuit.

Nov. 17, 1952.

Arthur H. Kent, Valentine Brookes, San Francisco, Cal., for appellant.

Ellis N. Slack, Acting Asst. Atty. Gen., Lee A. Jackson, Irving I. Axelrad and Harry Baum, Sp. Assts. to Atty. Gen., and Chauncey Tramutolo, U. S. Atty., and Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal., for appellee United States.

Before DENMAN, Chief Judge, HEALY, Circuit Judge, and HARRISON, District Judge.

DENMAN, Chief Judge.

This is an appeal from a decision of the United States District Court for the Northern District of California, in which the United States recovered certain refunds paid to the taxpayer on the ground they were not due him.

The refunds were for items of overpayment of taxes for the tax years 1943 and 1944. They were allowed and paid to taxpayer on the ground that annuities in the amount of $2,000. for each year returned as income were erroneously treated by the taxpayer as ordinary income, whereas each should have been taxed for but " * * * 3 per centum of the aggregate premiums or consideration paid for such annuity." Int. Rev.Code, § 22(b)(2)(A), 26 U.S.C. § 22 (b)(2)(A).

The facts are not disputed. Crispin was employed by Standard-Vacuum Oil Co. from 1930 to 1941 and resided continuously in China during this period of time up to December 10, 1940, when he returned to the United States. He participated in a group annuity plan of his employer whereby both employer and employee made contributions to the Metropolitan Life Insurance Company for an annuity agreement payable to Crispin during his life, conditioned on his remaining in the oil company's employ until he became eligible for retirement. Crispin contributed $2,156.00 toward the cost of the annuity, while the employer contributed $30,631.68. The amounts thus did not become the property of Crispin until he became eligible to retire on September 19, 1940. This $30,631.68 of the cost of the annuity contract is cleary income to Crispin in that year, such income being defined in

Section 22(a) as including "income derived from * * * compensation for personal service * * * in whatever form paid". Hackett v. Commissioner, 1 Cir., 159 F.2d 121.

If Crispin had given his services in the United States, he would be entitled to compute the annuities he received from the insurance company under 22(b)(2)(A), providing:

"* * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity".

The government contends that Crispin is not entitled to compute his annuity receipts in 1943 and 1944 under the 3 per centum provision because he was exempted from taxation on the annuity contract premiums paid by the employer for services rendered in China, under 26 U.S.C. §§ 116(a)(3) and 119(c)(3).

 There is nothing in the phrase "3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year)" which confines Crispin's tax minimization only to consideration for the annuity contract which is *taxable* to him (or paid by him). The purpose of the freedom of taxation of foreign earned income is stated in the House Report on the bill which became Sections 116(a)(3) and 119(c)(3), supra, to be "in an endeavor to take one more step towards increasing our foreign trade * * *." H.R.Rep. 1, 69th Cong. 1st Sess., p. 7. In construing this provision, the Seventh Circuit held in Commissioner v. Fiske's Estate, 128 F.2d 487, 490:

"It is agreed that § 116(a) was intended to stimulate foreign trade, and to relieve our citizens resident in foreign countries, engaged there in the promotion of American foreign trade for more than six months of the taxable year, from tax upon income which they earned in the foreign country. * * *"

It is apparent that what Crispin received in his foreign service was an annuity contract for his protection during his old age. We think that it is in accord with the Congressional purpose to encourage such foreign employment that he should have the tax benefit arising from the annuity contract there received.

The government relies on the Tax Court decision in Jones v. Commissioner, 2 T.C. 924, and the decision in Hackett v. Commissioner, 1 Cir., 159 F.2d 121, 124. In the Jones case the employee was held entitled to deduct only to the extent of the small contributions which he had paid toward the acquisition of the contract. It excluded from its consideration the question of the taxability to the employee of the amounts contributed by the employer, later held so taxable to the employee in Hackett v. Commissioner, supra. The Tax Court was considering the case of an employee in the United States and uses the phrase "taxable income," as the amount to which the 3% provision is applicable, as does the Hackett case. Neither is applicable to Crispin given the benefit of the tax exemption to encourage our foreign commerce. The situation of Crispin could not have been considered in these cases.

The judgment against Crispin ordering the return of the refunds is reversed.