## PACIFIC CO., LTD. *v.* JOHNSON, STATE TREASURER.

No. 270. Argued January 8, 1932. Reargued March 17, 1932.—Decided April 11, 1932.

*Mr. Stuart Chevalier,* with whom *Messrs. Melvin D. Wilson, Joseph D. Peeler, Donald O. Hunter,* and *Robert N. Miller* were on the brief, for appellant.

482

*Messrs. H. H. Linney,* Deputy Attorney General of California, and *U. S. Webb,* Attorney General, with whom *Mr. Frank L. Guerena* was on the brief, for appellee.

486

Mr. Justice Stone delivered the opinion of the Court.

This case is here on appeal, Jud. Code § 237, from a judgment of the Supreme Court of California, denying

488

recovery of a tax paid by appellant, a California corporation, for the privilege of doing business within the state, and exacted under a statute [1] alleged to be in contravention of the contract clause, Art. I, § 10, of the Federal Constitution.   212 Cal. 148.   The annual tax is, for domestic corporations, a specified percentage of the net income of the corporation for the next preceding fiscal or calendar year.   By § 7 of the statute, net income is defined as "gross income" less certain allowed deductions, and § 6 provides that "gross income . . . includes . . . all interest received from federal, state, municipal or other bonds . . . "   Section 1¾ of Art. XIII of the Constitution of California, adopted in 1902, provides that bonds issued by political subdivisions of the State and its municipalities "shall be free and exempt from taxation."

The State Franchise Tax Commissioner, in assessing appellant's franchise tax for the year 1928, included in its gross income interest derived from improvement district bonds, issued after the adoption of the quoted exemption provision of the Constitution, but before the constitutional amendment and the statute authorizing the tax. The present suit was brought to recover so much of the tax as results from the inclusion in the computation, of the interest received from the tax-exempt bonds.  Appellant insists that, under the exemption clause of the State Constitution, it acquired a contractual immunity from state taxation of the bonds or their income, and that the later statute, by authorizing the inclusion of the bond interest in the measure of the tax, in effect taxed the income and thus impaired the obligation of the contract.

---

[1] The California Bank and Corporation Franchise Tax Act, Cal. Stat. 1929, c. 13, p. 19, enacted pursuant to an amendment of the California Constitution, § 16, Art. XIII, adopted November 6, 1928, which authorized a tax on corporate franchises.

If, as appellant argues, the exemption from taxation of the bonds is contractual and extends to the income derived from them, the question still remains whether the immunity is broad enough to secure freedom from taxation of a corporate franchise, to the extent that it is measured by tax-exempt income. This Court, in answering that question, will, in the absence of applicable state decisions antedating the alleged impairment, be guided by generally accepted principles -of construction which have been recognized and acted upon by this Court.

Until the article of the Constitution adopted in 1928, and the statute of 1929, there were no provisions in the Constitution and laws of California for taxing corporate franchises by the present method, and until this case no decision by any court of the state had determined whether the granted immunity extends to a tax upon corporate franchises because tax-free property or income is included in its measure. Long before the adoption of the constitutional exemption, there was a well-recognized distinction between a tax on the privilege of exercising the corporate franchise and a tax on corporate property or income, even though the former was measured by the latter, and tax immunity of the property or income was not deemed to extend to the franchise.

The power of a state to levy a franchise tax measured by net property or income including tax-exempt bonds of the United States or their income was upheld by this Court in *Society for Savings* v. *Coite* (1868), 6 Wall. 594; *Provident Institution* v. *Massachusetts* (1868), 6 Wall. 611; *Home Insurance Co.* v. *New York* (1890), 134 U. S. 594. State laws taxing shareholders of national banks on the full net value of their shares, although the banks own tax-exempt federal securities, have also been consistently upheld. *Van Allen* v. *Assessors*, 3 Wall. 573; *Peoples National Bank* v. *Board of Equalization*, 260 U. S. 702; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103.

Similarly Congress may impose a tax on state banks measured by the average amount of their deposits, although deposits of state funds by state officers are included. *Manhattan Co.* v. *Blake*, 148 U. S. 412. The rule that a tax upon a franchise, measured by net income, including that from tax-immune property, is not an infringement of the immunity, was re-examined and affirmed in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, which was accepted as authority in *Macallen Co.* v. *Massachusetts*, 279 U. S. 620, and followed in *Educational Films Corp.* v. *Ward*, 282 U. S. 379.

This distinction, so often and consistently reaffirmed, is but a recognition that the franchise, the privilege of doing business in corporate form, which is a legitimate subject of taxation, does not cease to be such because it is exercised in the acquisition and enjoyment of non-taxables. The distinction is one of substance, not of form, and has been so recently discussed in *Educational Films Corp.* v. *Ward* that it need not be elaborated here. It suffices to say that the tax immunity extended to property *qua* property does not embrace a special privilege, the corporate franchise, otherwise taxable, merely because the value of the corporate property or net income is included in an equable measure of the enjoyment of the privilege. The owner may enjoy his exempt property free of tax, but if he asks and receives from the state the benefit of a taxable privilege as the implement of that enjoyment, he must bear the burden of the tax which the state exacts as its price.

Appellant lays no foundation for the assertion that the state court erroneously construed the grant of immunity as limited to taxes imposed on the bonds and their interest, and as not embracing taxes on the franchise measured by the net income of the taxpayer without discrimination as to its source. We cannot say that this construction, with which no judicial decision of the

state conflicts, and which is supported by an unbroken line of decisions of this Court, some of them antedating the grant, is erroneous or that the later enactment of the challenged statute, in all respects consistent with it, impairs any contractual right which could be implied from the grant. Even if the construction were doubtful, the doubt, upon familiar principles, must be resolved in favor of the state. Grants of immunity from taxation, in derogation of a sovereign power of the state, are strictly construed. *Providence Bank* v. *Billings,* 4 Pet. 514, 561; *Delaware Railroad Tax Case,* 18 Wall. 206, 225-226; *Jefferson Branch Bank* v. *Skelly,* 1 Black 436, 447; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; *Yazoo & Mississippi Valley R. Co.* v. *Thomas,* 132 U. S. 174; *Vicksburg, S. & P. R. Co.* v. *Dennis,* 116 U. S. 665.

But appellant insists that even though the granted exemption is not broad enough to preclude, in every instance, the inclusion of tax-exempt income in the measure of the tax, its inclusion by the present statute is not a casual incident to a scheme of taxation of franchises measured by all net income, such as was upheld in *Flint* v. *Stone Tracy Co., supra,* but is the result of a fully disclosed legislative purpose to subject to taxation the income of non-taxables, such as was deemed to invalidate the tax in *Miller* v. *Milwaukee,* 272 U. S. 713, and in *Macallen Co.* v. *Massachusetts, supra.* In support of this contention, appellant points to the language of the taxing act, specifically including the income from tax-exempt bonds in the measure of the tax, and to its legislative history.

The California Constitution was amended and the legislation taxing corporate franchises was enacted shortly after the decisions of this Court in *First National Bank* v. *Hartford,* 273 U. S. 548, and *Minnesota* v. *First National Bank,* 273 U. S. 561, which held that the requirement of R. S. § 5219, of an approximate equality of state taxation

of national banks and of moneyed capital competing with them, comprehends the taxation not only of moneyed capital employed by state and private banks, but also that of other corporations in substantial competition with national banks. The State of California had previously imposed a tax on shareholders in banks, based on their proportionate share of the undivided profits, capital and surplus. Corporations other than banks, public utility, and insurance companies were taxed on the basis of their " corporate excess," in the computation of which non-taxable bonds were not included. In 1927 the California legislature created a commission to prepare a scheme of taxation which would secure the requisite equality. To attain this end the report of the Commission of August 10, 1928, (included in the final report of California Tax Commission of March 5, 1929, State Printing Office, Publication No. 63725, at p. 243, *et seq*.) recommended the adoption of the present corporate franchise tax as conforming to subdivision 4 of R. S. 5219, which permits the state taxation of national banks " according to or measured by their net income." In the course of the report, specific reference is made to the belief of the Commission that in the computation of such a tax the income of non-taxable federal bonds might be included in the measure of the tax, and it sufficiently appears from the report that the Commission was not unaware that income from bonds of the state would likewise be included by the proposed legislation and, indeed, that the desired equality of taxation of local corporations with that on national banks, measured by income, could not otherwise be secured. The adoption of the taxing act, as recommended by the Commission, may therefore be taken, as appellant contends, to evidence a definite and specific legislative purpose to levy a new type of franchise tax, measured by corporate net income, including the tax-exempt income from federal and state bonds.

The view that a tax, although levied on a taxable subject, may be deemed invalid because purposely devised to include a non-taxable subject in its measure, receives only a limited and qualified support from *Miller* v. *Milwaukee, supra.* There a state statute taxing corporate dividends was framed in such manner as to tax them only so far as they were derived from corporate income from tax-exempt bonds of the United States. The taxing act thus, on its face, did more than exhibit an intention of the one sovereignty to include in the dividends taxed, those derived from income from a non-taxable instrumentality of the other, together with income from all other sources. That admittedly would have been permissible; see *Des Moines National Bank* v. *Fairweather, supra; Flint* v. *Stone Tracy Co., supra; Educational Films Corp.* v. *Ward, supra.* But it was the exclusion from the measure of the tax of all income except from federal bonds which rendered the tax invalid.

Thus, in our dual system of government, action of the one government in the proper exercise of its sovereign powers, regarded as innocuous and permissible notwithstanding its incidental effects on the other, may become offensive and be deemed forbidden if it discriminates against the other. State taxes which, if non-discriminatory, would be upheld, even though they reach or affect those engaged in interstate commerce, are condemned if they discriminate against those so engaged, by placing on them heavier burdens than those imposed on others within the state. *Welton* v. *Missouri*, 91 U. S. 275, with which compare *Wagner* v. *Covington*, 251 U. S. 95; *Darnell & Son Co.* v. *Memphis*, 208 U. S. 113; *Bethlehem Motors Corp.* v. *Flynt*, 256 U. S. 421. Cf. *Reymann Brewing Co.* v. *Brister*, 179 U. S. 445. See *General American Tank Car Corp.* v. *Day*, 270 U. S. 367, 372.

But the present case is not one of discrimination. There is no attempt, as in *Miller* v. *Milwaukee, supra*, to meas-

ure the tax by exempt income while excluding from the measure all taxable income. The state seeks to do only what its contract permits it to do, to measure the franchise tax by all the net income of the taxpayer. If the words " net income " in the taxing statute may rightly be taken to include income from tax-exempt bonds, as they were in *Flint* v. *Stone Tracy Co., supra,* then there can be no tenable ground for saying that the addition of the words " income . . . includes . . . all interest received from federal, state, municipal or other bonds," discloses any different purpose on the part of the legislature, or can have any different effect, or can more definitely infringe the exemption than did the tax upheld in *Flint* v. *Stone Tracy Co., supra,* or that in *Educational Films Corp.* v. *Ward, supra.*

But it is said that the ruling of this Court in *Macallen Co.* v. *Massachusetts, supra,* requires the condemnation of the present tax. There the Commonwealth, which had long imposed a tax on corporate franchises measured by taxable income of the corporation, amended its statutes so as to add the income from tax-exempt bonds of the federal government to the measure of the tax. It was held that this change of taxation policy, embodied in the statute and " adopted as though it had been so declared in precise words for the very purpose of subjecting these securities *pro tanto* to the burden of the tax," was invalid. Thus the legislative abandonment of a policy which had previously discriminated in favor of tax-exempt securities was treated as a discrimination against them, and the tax, although in fact non-discriminatory, was condemned as analogous to the discriminatory tax held invalid in the *Miller* case. See *Macallen Co.* v. *Massachusetts, supra,* pp. 630, 631.

But the State of California, in its legislation, has indulged in no reversal of policy so far as the measure-

ment of the franchise tax is concerned and in no discrimination either in favor of or against tax-exempt income. The entire history of its legislation discloses only that it has sought, in good faith, to conform its scheme of taxation of corporations to a permitted method of taxing national banks, to avoid discrimination against the latter. It has effected its purpose by adopting, in a single legislative act, a new form of privilege tax on corporations measured by their net income, without any form of discrimination as to the sources of the income included in the measure, differing in this respect in no material way from the similar tax upheld in *Flint* v. *Stone Tracy Co.* and in *Educational Films Corp.* v. *Ward, supra.* We should hesitate to say that any action of the legislature or any purpose disclosed by a state commission could restrict the power of the state by constitutional amendment to authorize a tax which admittedly it could have authorized without them. In any case, the use of words in the statute and report, indicating what would otherwise have been implied, that "income" includes income from tax-exempt bonds, could neither enlarge the exemption nor diminish the constitutional power of the state.

But we do not rest our decision upon any narrow distinction as to the precise form of words which may be employed in taxing statutes or the particular order in which its provisions are incorporated in the statute, whether by a single legislative act or by amendment or the addition of new provisions in successive reenactments. A taxing statute, like others, must be read as a whole, as it stands on the statute books at its applicable date, and the legislative purpose in enacting it must be taken, regardless of forms of words, to envisage the obvious consequences which flow from its operation. Since the mere intent of the legislature to do that which the Constitution permits cannot deprive legislation of its constitutional

validity, and the purposeful choice by the state of a method of taxation which appellant's contract allows, cannot alter the terms of the contract, the present act must be judged by its operation rather than by the motives which inspired it. As it operates to measure the tax on the corporate franchise by the entire net income of the corporation, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity.

*Affirmed.*

Mr. Justice Sutherland, dissenting:

Mr. Justice Van Devanter, Mr. Justice Butler and I are unable to agree with the opinion and judgment just announced:

In *Miller* v. *Milwaukee*, 272 U. S. 713, speaking through Mr. Justice Holmes, this Court said [p. 715]:

" If the avowed purpose or self-evident operation of a statute is to follow the bonds of the United States and to make up for its inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose or special operation it would be perfectly good. Under the laws of Wisconsin the income from the United States bonds may not be the only item exempted from the income tax on corporations, but it certainly is the most conspicuous instance of exemption at the present time. A result intelligently foreseen and offering the most obvious motive for an act that will bring it about, fairly may be taken to have been a purpose of the act. On that assumption the immunity of the national bonds is too important to allow any narrowing beyond what the Acts of Congress permit. We think it would be going too far to say that they allow an intentional interference that is only prevented from being direct by the artificial distinction between a corporation and its members. A tax very well may be upheld as against any

casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them, but it becomes a more serious attack upon their immunity when they are its obvious aim. In such a case the Court must consider the public welfare rather than the artifices contrived for private convenience and must look at the facts."

In *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, the principle thus announced was applied to an act imposing a corporate excise tax affecting the state's municipal securities in the same way as the California act affects the bonds here under consideration. These municipal securities were issued and acquired prior to the passage of the act, and when so issued and acquired were exempt from all forms of taxation by the express terms of a state statute. The situation in that respect is the same here, except that the exemption from taxation was made by the state Constitution instead of by statute. There, as here, the constitutionality of the act was challenged under the federal Constitution as impairing the obligation of contracts. We sustained the challenge, and pointed out that while a state was at liberty to impose a franchise tax upon a corporation with respect to the doing of its business, it could not tax the income of the corporation derived from nontaxable securities. We held that the effect of the taxing act was to repeal the prior statute and impose a burden upon the securities from which, by express provision of law, they had theretofore been free. In confirmation of this conclusion the report of a special commission appointed by the legislature to investigate the subject of taxation of banking institutions was cited and quoted. That report recommended the adoption of legislation which, by means of an excise upon the doing of business, would reach income from securities then exempt from taxation, either under federal or state law. The report received the con-

sideration of the legislature, and, we thought it fair to suppose, constituted the basis for adopting the challenged act. We said (p. 633):

" The effect of the report is that non-taxable bonds nevertheless should be subjected to the burden of the tax; and, since that could not be imposed directly, the clear intimation is that it be imposed indirectly through the medium of the so-called ' excise '."

We therefore concluded that the act manifested a change of policy adopted with the aim and for the purpose of subjecting the tax-exempt securities, *pro tanto,* to the burden of the tax, and, therefore, impaired " the obligation of the statutory contract, of the state by which such bonds were made exempt from state taxation."

In the present case the aim and purpose of the California legislature to reach the same illegal result by indirection is no less clear. Here, as in Massachusetts, the State Tax Commission investigated the subject and made a special report to the Governor for submission to the legislature. In the course of the report the commission expressed the opinion that the only practicable method of securing a substantial revenue from the banks was to tax them " according to or measured by net income." This was designated its "fourth method." As distinguished from the " third method " suggested, the commission said that such a tax " is designed to include within the scope of its application certain types of income which may not legally be reached by a pure net income tax—such as interest on tax-exempt government bonds. . . . The third method may be discarded in favor of the fourth, because under the fourth everything can be accomplished which may be gained by proceeding under the third, and presumably more besides, viz., *the inclusion, if desired, of tax-exempt interest in the base.*"

Later in its report, under the heading " Importance of Including Tax-exempt Interest in Base," the commission,

after calling attention to the *Macallen* case, then pending but not decided, said:

" In the case of corporations other than banks, the point is not of vital importance. *But the banks hold such large quantities of these tax-exempt bonds that the effect of a decision holding that the state may not include them in the base would be very serious indeed."*

There is more in the report to like effect.

In January, 1929, the two houses of the state legislature gave public hearings on the subject. Among others, Professor Haig of Columbia University, who had served as technical advisor to the commission, appeared and made a statement, in the course of which, in explanation of bills then pending, he said:

" Now, as to the definition of net income. You will find this material presented in section 6 and following. In the first place, the definition of income is broad, in one respect, in that it does attempt *to include within the scope of the base used as the measure of the tax income received from tax-exempt securities*—that is, government bonds and so on. . . . Interest from tax-exempt bonds is an exceedingly important item in a tax which is applied to banks. The definition is broad, in that it does include this tax-exempt interest in the base which is used as a measure of the value of the franchise."

The act here in question, which resulted from, and evidently was based upon, the report of the Commission and the statements of its advisor, provides in express terms:

" Sec. 6. The term ' gross income,' as herein used, includes . . . all interest received from federal, state, municipal or other bonds, . : .

" Sec. 7. The term ' net income,' as herein used, means the gross income less the deductions allowed." (No deduction, however, is allowed for interest received from federal, state, municipal or other tax-exempt bonds.)

The foregoing is so plain that comment or elucidation would seem unnecessary. The bare recital of the facts, in our opinion, shows how unreasonable it is to hold that the aim and purpose of the legislation was not, by indirection, to impose a tax upon income derived from tax-exempt securities which, constitutionally, could not be imposed directly. To say that the effect of the tax upon the tax-exempt bonds is " casual " and not its " obvious aim," (*Miller* v. *Milwaukee, supra*), is simply to presume upon our credulity. We think there is no escape from the conclusion that if the *Miller* and *Macallen* cases were followed the legislation here under review would be condemned. To base a distinction of these cases from the pending case upon differences so lacking in substance as to be in effect no differences at all, simply adds to the confusion already too great in this field of taxation.

The California franchise tax, in its application to the bonds here under consideration, is peculiarly indefensible. When these bonds were issued and acquired they were, by express constitutional provision, made " free and exempt from taxation." Upon the faith of that provision the bonds were bought.. The fact that they were to be free from taxation must have resulted in the receipt of a larger price than otherwise would have been the case. The difference between the sum paid and what would have been paid but for the exemption was, in a very real sense, money taken from the purchaser in exchange for the tax immunity—as though future taxes had been anticipated by an immediate payment of the amount, computed on the basis of their present worth. By every principle of fair construction, the purchaser having paid for this immunity became entitled to hold the bonds and income therefrom free from any future taxation, the burden of which, however disguised, would fall, and was meant to fall, upon them. Otherwise the contractual ob-

ligation is a mere sham, signifying nothing. It is not denied, as we understand, that if the state had laid the tax directly upon the income derived from the bonds an unconstitutional impairment of the obligation would have resulted. And, in this respect, it is hard to see any substantial difference between a tax laid directly upon the income and one laid upon a privilege but measured by, and definitely intended to reach, such income. Undoubtedly, a state has the power to impose a franchise tax for the privilege of doing business as a corporation within the state and also to measure that tax by the amount of income received; but in every case where this court has sustained the validity of such a tax, when measured in part by non-taxable income, it has done so upon the view, implicit or express, that the latter in fact and reality was not the subject sought to be taxed, and that any burden thereby put upon it was casual and incidental.

A tax in form laid upon A but measured by B at once suggests that B was in reality the thing aimed at; and if inquiry discloses, as it does here, that such is the fact, the tax, assuming B to be non-taxable, should not be allowed to stand in the face of the settled principle that what cannot be done directly because of constitutional restriction cannot be done indirectly by legislation designed to reach the same end. *Fairbank* v. *United States,* 181 U. S. 283, 294, 300.

It is important for the states and their municipalities to obtain revenue; but, in doing so, it is also important that they shall not dishonor their promises. The moral duty of a state to keep its word, in spirit as well as in letter, is no less than that of an individual; and courts which condemn direct impairment by legislation of contractual obligations should not be over-ready to approve the adoption of circuitous and delusive means, which in form avoid but in fact accomplish the same unconstitutional result.