## FIRST NATIONAL BANK OF EL RENO v. OKLAHOMA TAX COMMISSION.

No. 28284. March 21, 1939.

Rehearing Denied May 16, 1939.

Melone, Porter & Melone, for plaintiff in error.

C. D. Cund, A. L. Herr, and Wendell Barnes, for defendant in error.

Joseph L. Hull, amicus curiae.

OSBORN, J. This action was instituted in the district court of Oklahoma county by the First National Bank of El Reno, hereinafter referred to as plaintiff, against the Oklahoma Tax Commission, hereinafter referred to as defendant, wherein plaintiff sought recovery of certain taxes paid under protest. A demurrer was sustained to plaintiff's petition, plaintiff elected to stand on its pleadings, judgment was entered in favor of defendant, and plaintiff has appealed.

The purpose of this proceeding is to test the constitutionality of section 16, article 6, chapter 66, Session Laws 1935, being that section of the statute now in force which fixes the rate of levy of the tax which must be paid by national banks. Said section, in part, is as follows:

"(a) In lieu of the tax imposed by section 6, every national banking association located or doing business within the limits of the state of Oklahoma, shall annually, pay to this state, a tax according to or measured by, its net income, to be computed in the manner hereinafter provided, at the following rates upon the basis of its entire net income for the next preceding fiscal or calendar year:

"Six (6%) per centum of the amount of the net income as herein provided.

"(b) The state of Oklahoma is hereby adopting method numbered (4), authorized by section 5219, U. S. Revised Statutes, as amended. The tax imposed by this section, shall be exclusive and in lieu of all taxes imposed by the state of Oklahoma, or any subdivision thereof, on the property of any association liable to tax hereunder; provided, that nothing in this section shall be construed to exempt the real property of national banking associations from taxation to the same extent, according to its value, as other real property is taxed."

Section 5219, supra (title 12, sec. 548, U. S. C. A.), which is the act of Congress authorizing the taxing of national banking associations, is, in part, as follows:

"The Legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) **according to or measured by their net income, provided the following conditions are complied with:**

"1. (a) The imposition by any state of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks; Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section.

"(c) In case of a tax on or according to or measured by the net income of an association, the taxing state may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing state upon mercantile, manufacturing, and business corporations doing business within its limits: Provided, however, that a state which imposes a tax on or according to or measured by the net income of, or a franchise or excise tax on, financial, mercantile, manufacturing, and business corporations organized under its own laws or laws of other states and also imposes a tax upon the income of individuals, may include in such individual income dividends from national banking associations located within the state on condition that it also includes dividends from domestic corporations and may likewise include dividends from national banking associations located without the state, on condition that it also includes dividends from foreign corporations, but at no higher rate than is imposed on dividends from such other corporations.

"(d) In case the dividends derived from the said shares are taxed, the tax shall not be at a greater rate than is assessed upon the net income from other moneyed capital."

As grounds for establishing the invalidity of the state act, it is urged that the same constitutes an attempt to impose a tax upon income derived from securities and instrumentalities of the United States, which income is tax free; that other corporations and individuals engaged in business similar to that of plaintiff and in competition with plaintiff in the use of money capital are taxed at a lower amount and rate and in a different manner than is the plaintiff.

Under the terms of the federal act it is noted that the tax is to be measured by the "entire net income received from all sources."

Subsection (c), section 8 of the state act, provides:

"In the case of national banking associations, state banks, trust companies and other financial corporations, doing business in or organized under the laws of this state, the term 'gross income' includes the items of income enumerated in section 18."

Subsection (b), section 18, supra, provides:

"The term 'gross income' shall also include the interest upon the obligations of the United States, or its possessions, or upon securities issued under the authority of an act of Congress, the income from which is tax-free."

The constitutionality of these provisions of the act is challenged by plaintiff on the following grounds:

"1. As impairing the obligation of contracts.

"2. As an attempt to impose a tax upon income derived from securities and instrumentalities of the United States.

"3. As depriving plaintiff of its property without due process of law and denying the equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

"4. As an impairment and in derogation of the power of Congress to borrow money on the credit of the United States."

These identical propositions were raised in the case of Macallen Co. v. Massachusetts, 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 875, 65 A. L. R. 866, wherein the constitutionality of a similar act was tested in the Supreme Court of the United States. In that case the act was stricken down. Other similar legislative acts have been approved by that court. We shall refer to some of them. In the case of Pacific Company v. Johnson, 285 U. S. 480, 52 S. Ct. 424, 76 L. Ed. 893, the court was dealing with a California statute fixing a corporation franchise tax measured by net income, including "all interest received from federal, state, municipal or other bonds." The act was declared valid. In discussing the case of Macallen Co. v. Massachusetts, supra, it was said:

"But it is said that the ruling of this court in Macallen Co. v. Massachusetts, supra, requires the condemnation of the present tax. There the commonwealth, which had long imposed a tax on corporate franchises measured by taxable income of the corporation, amended its statutes so as to add the income from tax-exempt bonds of the federal government to the measure of the tax. It was held that this change of taxation policy, embodied in the statute and 'adopted as though it had been so declared in precise words for the very purpose of subjecting these securities pro tanto to the burden of the tax', was invalid. Thus the legislative abandonment of a policy which had previously discriminated in favor of tax-

exempt securities was treated as a discrimination against them, and the tax, although in fact nondiscriminatory, was condemned as analogous to the discriminatory tax held invalid in the Miller Case. See Macallen Co. v. Massachusetts, supra, pp. 630, 631.

"But the state of California, in its legislation, has indulged in no reversal of policy so far as the measurement of the franchise tax is concerned and in no discrimination either in favor of or against tax-exempt income. The entire history of its legislation discloses only that it has sought, in good faith, to conform its scheme of taxation of corporations to a permitted method of taxing national banks, to avoid discrimination against the latter. It has effected its purpose by adopting, in a single legislative act, a new form of privilege tax on corporations measured by their net income, without any form of discrimination as to the sources of the income included in the measure differing in this respect in no material way from the similar tax upheld in Flint v. Stone Tracy Co., and in Educational Films Corp. v. Ward, supra. We should hesitate to say that any action of the Legislature or any purpose disclosed by a state commission could restrict the power of the state by constitutional amendment to authorize a tax which admittedly it could have authorized without them. In any case, the use of words in the statute and report, indicating what would otherwise have been implied, that 'income' includes income from tax-exempt bonds, could neither enlarge the exemption nor diminish the constitutional power of the state.

"But we do not rest our decision upon any narrow distinction as to the precise form of words which may be employed in taxing statutes or the particular order in which its provisions are incorporated in the statute, whether by a single legislative act or by amendment or the addition of new provisions in successive re-enactments. A taxing statute, like others, must be read as a whole, as it stands on the statute books at its applicable date, and the legislative purpose in enacting it must be taken, regardless of forms of words, to envisage the obvious consequences which flow from its operation. Since the mere intent of the Legislature to do that which the Constitution permits cannot deprive legislation of its constitutional validity, and the purposeful choice by the state of a method of taxation which appellee's contract allows, cannot alter the terms of the contract, the present act must be judged by its operation rather than by the motives which inspired it. As it operates to measure the tax on the corporate franchise. by the entire net income of the corporation, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity."

In the case of Educational Films Corp. v. Ward, 282 U. S. 379, 75 L. Ed. 400, 51 S. Ct. 170, it was said:

"While this court, since McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, has consistently held that the instrumentalities of either government, or the income derived from them, may not be made the direct object of taxation by the other (citing cases) it has been held with like consistency that the privilege of exercising the corporate franchise is no less an appropriate object of taxation by one government merely because the corporate property or net income, which is made the measure of the tax, may chance to include the obligations of the other, or the income derived from them. The constitutional power of one government to reach this permissible object of taxation may not be curtailed because of the indirect effect which the tax may have upon the other."

See, also, Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; General Securities Co. v. Williams (Tenn.) 29 S. W.2d 662.

The statute herein involved (sec. 16, art. 6, chap. 66, S. L. 1935) was enacted pursuant to specific authority granted by Congress which authorized the levy of a tax "according to or measured by the entire net income [received] from all sources." It was, no doubt, contemplated that income derived from tax-exempt securities would be included.

The power of the state to levy a franchise tax measured by net property or income, including tax-exempt bonds of the United States, or their income, has been upheld by the Supreme Court of the United States in a long line of decisions. The state act and the permissive federal act involved herein clearly indicate that such a tax was contemplated and levied; therefore, under the authorities, no state or federal constitutional provision has been contravened by this taxing statute.

The fact that a different manner of taxation has been provided for national banking associations than that used to tax other persons and corporations engaged in similar business provides no ground for complaint. The state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality or unjust discrimination is inflicted upon them. People of New York ex rel. Amoskeag Savings Bank v. Purdy, 231 U. S. 373, 34 S. Ct. 114.

Since the tax levied by the act involved herein is "exclusive and in lieu of all taxes

imposed by the state of Oklahoma or any subdivision thereof", and since it further appears that a tax similar in amount is levied by section 17 of the act against "every bank or trust company organized under the banking laws of this state, or Morris Plan Company", it appears that there is no merit in plaintiff's contention that the tax levied against it is greater in amount than the tax levied against other persons and corporations in competition with it.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.