# TRADĒSMENS NATIONAL BANK OF OKLAHOMA CITY v. OKLAHOMA TAX COMMISSION.

No. 596.  Submitted March 6, 1940.—Decided March 25, 1940.

*Mr. E. A. Walker* submitted for appellant.

*Mr. F. M. Dudley* submitted for appellee.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This is an appeal under § 237 of the Judicial Code from a judgment of the Supreme Court of Oklahoma, denying recovery of taxes alleged to have been exacted from appellant, a national banking corporation, in violation of the provisions of R. S. 5219 and the Constitution of the United States.

Section 16 of the Oklahoma Income Tax Law of 1935, S. L. 1935, c. 66, art. 6,[1] lays a tax upon every national banking association located or doing business within the state "according to, or measured by, its net income" at the

---

[1] The text of § 16 reads as follows:

"(a) In lieu of the tax imposed by Section 6, every national banking association located or doing business within the limits of the State of Oklahoma, shall annually, pay to this State, a tax according to, or measured by, its net income, to be computed in the manner hereinafter provided, at the following rates upon the basis of its entire net income for the next preceding fiscal or calendar year:

"Six (6%) per centum of the amount of the net income as herein provided.

"(b) The State of Oklahoma is hereby adopting method numbered (4), authorized by Section 5219, U. S. Revised Statutes, as amended. The tax imposed by this Section shall be exclusive and in lieu of all taxes imposed by the State of Oklahoma, or any subdivision thereof, on the property of any association liable to tax hereunder; provided, that nothing in this Section shall be construed to exempt the real property of national banking associations from taxation to the same extent, according to its value, as other real property is taxed."

rate of six per centum. Section 17 provides for a similar tax upon state banks and Morris Plan Companies.

The net income used as the measure of the tax under §§ 16 and 17 is determined by subtracting from gross income, as defined in § 18, certain deductions allowed by § 9. Section 18 defines gross income for the purposes of "National banking associations, state banks, trust, companies and other financial corporations," § 8 (c). It specifically includes in gross income "interest upon the obligations of the United States, or its possessions, or upon securities issued under the authority of an Act of Congress, the income from which is tax free."

All other types of corporations are taxed at the flat rate of six per centum upon the net income allocable to business transacted within the state, § 6. Net income for this purpose is determined by making certain specified deductions from gross income, §§ 7, 9, which is defined expressly so as to exclude interest on tax-immune federal securities, § 8 (b) (4).

The appellee Oklahoma Tax Commission, in assessing appellant's tax for the year 1936 under § 16, included in gross income the dividends received by appellant on stock owned by it in a federal reserve bank and the interest received on bonds and notes issued pursuant to acts of Congress declaring the income from such securities tax exempt.[2] The present suit was brought by appellant to recover that portion of the tax, paid under protest, which resulted from including such dividends and interest in the computation.

---

[2] The stipulation of facts shows that the interest used in the computation of the tax was derived from the following types of securities: U. S. Treasury Notes; U. S. Treasury Bonds; Bonds of the Federal Farm Loan Act; Joint Stock Land Bank Bonds; Home Owners' Loan Corporation Bonds; and Federal Land Bank Bonds.

563

R. S. 5219, 12 U. S. C. § 548, copied in the margin,[3] authorizes four alternative methods whereby a state may impose a tax on national banking associations located within its limits. Method numbered (4) provides for a tax on such associations "according to, or measured by" "the entire net income received from all sources" subject only to certain restrictions as to the rate. This method was added to the three previously authorized under R. S. 5219 by an amendment of March 25, 1926, c. 88, 44 Stat. 223. The plain meaning of the amendment is confirmed by its legislative history showing beyond doubt that Congress intended to authorize a franchise

---

[3] "The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause.

"(c) In case of a tax on or according to or measured by the net income of an association, the taxing State may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits:

"3. Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed."

tax measured by net income including interest on tax-immune federal securities.[4]

Oklahoma in the 1935 act expressly ·followed and adopted the method thus authorized in the amendment. See *First National Bank* v. *Oklahoma Tax Commission,* 185 Okla. 98; 90 P. 2d 438. Subsection (b) of § 16 expressly declares that the state thereby adopts method numbered (4) authorized by R. S. 5219, 12 U. S. C. § 548.

The power of Congress to authorize a state to impose a tax on the franchise of a national banking association can not now be doubted. *Van Allen* v. *Assessors,* 3 Wall. 573. Compare *Keifer & Keifer* v. *Reconstruction Finance Corp.,* 306 U. S. 381, 389; *Helvering* v. *Gerhardt,* 304 U. S. 405, 411–412n; *Federal Land Bank* v. *Priddy,* 295 U. S. 229, 234–235. Any immunity attaching to the franchise by virtue of R. S. 5219 as it read prior to the 1926 amendment, compare *Pittman* v. *Home Owners' Loan Corp.,* 308 U. S. 21, could be withdrawn by Congress and the franchise subjected to state taxing power, just as national bank shares were so subjected by the Act of June 3, 1864. *Van Allen* v. *Assessors,* 3 Wall. 573. See *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103; *Peoples National Bank* v. *Board of Equalization,* 260 U. S. 702.

The power of a state to levy a tax on a legitimate subject, such as a franchise, measured by net assets or net income including tax-exempt federal instrumentalities or their income is likewise well settled. *Society for Savings* v. *Coite,* 6 Wall. 594; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Home Insurance Co.* v. *New York,* 134 U. S. 594; *Educational Films Corp.* v. *Ward,* 282 U. S. 379. Thus state laws taxing the shareholders of national banks in accordance with R. S. 5219 on the full net value of their shares, although the banks owned tax-

---

[4] 67 Cong. Rec. 5760–5762, 5822–5823, 6082–6089.

exempt federal securities, have been consistently upheld. *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103; *Peoples National Bank* v. *Board of Equalization*, 260 U. S. 702; *Van Allen* v. *Assessors*, 3 Wall. 573. The rule that a tax upon a legitimate subject, measured by net income, including that from tax-immune federal instrumentalities, is not an infringement of the immunity, was affirmed in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 147, 165, and followed in *Educational Films Corp.* v. *Ward*, 282 U. S. 379. Compare *Pacific Co.* v. *Johnson*, 285 U. S. 480, 490. The tax-immunity conferred on the securities owned by appellant has not been shown to be any greater in extent than that conferred on the federal securities included in the measure of the taxes sustained in the cited cases.

Sections 16 and 17 of the 1933 act were for present purposes identical with the corresponding sections of the 1935 act, but § 18 of the prior act contained a provision expressly excluding from gross income the interest on tax-immune federal securities.

Appellant contends that the act of 1935, by expressly including in the measure of the tax the interest on federal securities which before had been expressly excluded from the measure, must be regarded not as a valid franchise tax but as an unconstitutional levy on the tax-immune income itself. In support of its position, its main reliance is placed upon our decision in *Macallen* v. *Massachusetts*, 279 U. S. 620.

A similar contention was urged against the California franchise tax measured by net income, including tax-exempt income on state bonds, which was upheld in *Pacific Co.* v. *Johnson*, 285 U. S. 480. In rejecting the claim, the holding in the *Macallen* case was referred to as follows (285 U. S. at 494): "There the Commonwealth, which had long imposed a tax on corporate franchises measured by taxable income of the corporation, amended

its statutes so as to add the income from tax-exempt bonds of the federal government to the measure of the tax. It was held that this change of taxation policy, embodied in the statute and 'adopted as though it had been so declared in precise words for the very purpose of subjecting these securities *pro tanto* to the burden of the tax,' was invalid. Thus the legislative abandonment of a policy which had previously discriminated in favor of tax-exempt securities was treated as a discrimination against them, and the tax, although in fact non-discriminatory, was condemned as analogous to the discriminatory tax held invalid in the *Miller* case [*Miller* v. *Milwaukee*, 272 U. S. 713]." See also *Educational Films Corp.* v. *Ward*, 282 U. S. 379, 392–393.

It cannot be said that the Oklahoma tax in question here was aimed at tax-exempt federal securities in the manner thus disclosed and condemned in the *Macallen* case. The history of the Oklahoma legislation on this subject discloses only that it sought to change its policy pursuant to the express authorization conferred by R. S. 5219. It has effected its purpose by including within the measure of its franchise tax on national banks the entire net income without respect to source and without discrimination against tax-exempt federal securities. See *First National Bank* v. *Oklahoma Tax Commission*, 185 Okla. 98; 90 P. 2d 438.

We do not now decide just what circumstances, if any, would bring a situation within the precise scope of the *Macallen* case, assuming that case still has vitality. It is sufficient to hold, as we do, that the statute in the instant case meets the test stated in *Pacific Co.* v. *Johnson*, viz: "Since the mere intent of the legislature to do that which the Constitution permits cannot deprive legislation of its constitutional validity, . . . the present act must be judged by its operation rather than by the motives which inspired it As it operates to measure the tax on the cor-

porate franchise by the entire net income of the corporation, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity."

Appellant finally contends that the tax here in question violates the restriction in R. S. 5219 that "the rate shall not be higher than . . . the highest of the rates . . . assessed upon mercantile, manufacturing, and business corporations doing business" within the state.[5]

A consideration of the course of judicial decision on R. S. 5219 and its predecessors can leave no doubt that the various restrictions it places on the permitted methods of taxation are designed to prohibit only those systems of state taxation which discriminate in practical operation against national banking associations or their shareholders as a class. Compare *First National Bank* v. *Hartford*, 273 U. S. 548; *Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373; *Covington* v. *First National Bank*, 198 U. S. 100; *Lionberger* v. *Rouse*, 9 Wall. 468. Thus it is not a valid objection to a tax on national bank shares that other moneyed capital in the state or shares of state banks are taxed at a different rate or assessed by a different method unless it appears that the difference in treatment results in fact in a discrimination unfavorable to the holders of the shares of national banks. *Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373; *Covington* v. *First National Bank*, 198 U. S. 100.[6] We think the same purpose to prevent actual discrimination but to allow the states considerable freedom in working out an equitable tax system

---

[5] No claim is made that state financial institutions receive more favorable treatment than national banking associations. Sections 17, 18 and 8 (c) show that the tax imposed on such state institutions is the equivalent of the tax levied by § 16 on national banks.

[6] See also *Davenport Bank* v. *Davenport Board of Equalization*, 123 U. S. 83; *Mercantile Bank* v. *New York*, 121 U. S. 138; *Des Moines* v. *Fairweather*, 263 U. S. 103.

is discernable in the particular restriction upon which appellant relies.

The resolution of the issue raised by appellant thus turns upon an examination of the whole tax structure of the state. Counsel have stipulated that six thousand business and mercantile corporations, in addition to paying the income tax imposed by § 6 on six per centum of their net income, filed a corporation license tax return for the year 1936 and paid a tax based on one dollar per one thousand dollars of the value of the capital stock employed within the state, and that the Government bonds held by each were included as capital in the measure of the franchise tax. They further stipulated that only thirty-seven of these six thousand corporations owned Government bonds and that, in the case of all but three, the franchise taxes paid exceeded the additional amounts which would have been due under the income tax imposed by § 6 had their gross income, contrary to the fact, included the interest derived from the bonds. In addition to the foregoing taxes, so it is stipulated, each of these corporations paid an ad valorem tax on its moneyed capital.

This brief survey suffices to show that, considering all the taxes imposed upon business and mercantile corporations doing business in the state, the scheme of taxation adopted by Oklahoma does not discriminate against national banking associations. Discrimination is not shown merely because a few individual corporations, out of a class of several thousand which ordinarily bear the same or a heavier tax burden, may sustain a lighter tax than that imposed on national banking associations. Compare *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, at 393; *Lionberger* v. *Rouse,* 9 Wall. 468. Judged in the light of the established policy of Congress with respect to this subject, the 1935 Oklahoma taxing statute cannot be held to violate the provisions of R. S. 5219.

569

The other contentions advanced by appellant have been considered and found to be without substance.

*Affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.