

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

October 4, 1984

Honorable Bob Bullock
Comptroller of Public Accounts
LBJ State Office Building
Austin, Texas    73774

Opinion No.   JM-207

Re:   Whether section 151.311
of the Tax Code unconstitu-
tionally discriminates against
the federal government

Dear Mr. Bullock:

Chapter 151 of the Tax Code imposes limited sales, excise and use taxes on businesses which operate within this state and engage in certain specified activities. Subchapter H of chapter 151 sets forth specific exemptions to the imposition of such a tax. One such exemption, set forth in section 151.311, removes from the ambit of the tax tangible personal property purchased by a contractor and used for the improvement of realty belonging to entities which themselves are exempt from the imposition of the tax. Legislation enacted during the recent special session amended section 151.311 to remove the United States, its agencies, and its instrumentalities from the list of organizations receiving the section 151.311 exemption. Accordingly, you ask us the following two questions:

> I hereby request your opinion on whether the recent amendment to section 151.311, V.T.C.S., the Tax Code, discriminates unconstitutionally against the United States, its agencies and instrumentalities. If you conclude that it does not, I hereby request your further opinion on whether the amendment unconstitutionally discriminates between contractors who improve realty for the federal government under lump sum contracts and those who do so under separated contracts.

We answer both your questions in the negative. Section 151.311, as amended, does not impermissibly discriminate against either the United States, its agencies, and its instrumentalities or between contractors who improve realty for the federal government under "lump sum" contracts and those who do so under "separated" contracts.

Section 151.311 of the Tax Code now provides the following:

Sec. 151.311. PROPERTY USED FOR IMPROVEMENT OF REALTY OF AN EXEMPT ORGANIZATION. Tangible personal property <u>purchased by a contractor</u> for use in the performance of a contract for the improvement of realty for an organization exempted from the taxes imposed by this chapter <u>by Section 151.309(4) or (5) or Section 151.310 of this code</u> is exempted from the taxes imposed by this chapter to the extent of the value of the tangible personal property used or consumed or both in the performance of the contract. (Emphasis added).

Acts 1983, 68th Leg., 2nd C.S., ch. 31, art. XII, §1, at 551. The second portion of the underscored language was added by the amendment. Section 151.309 of the Tax Code sets forth the following:

§151.309. Governmental Entities

A taxable item sold, leased, or rented to, or stored, used, or consumed by, any of the following governmental entities is exempted from the taxes imposed by this chapter:

(1) the United States;

(2) an unincorporated instrumentality of the United States;

(3) a corporation that is an agency or instrumentality of the United States and is wholly owned by the United States or by another corporation wholly owned by the United States;

(4) this state; or

(5) a county, city, special district, or other political subdivision of this state.

Section 151.310 of the Tax Code acts to exempt religious, educational, and public service organizations as defined therein.

Prior to its amendment, section 151.311 exempted from the imposition of the tax tangible personal property used by a contractor for the improvement of realty belonging to all organizations listed as exempt in section 151.309. With the amendment to section 151.311, the only contractors of governmental entities so exempted are those which contract with the state and all its political subdivisions. Contractors of the United States, its agencies, and its instrumentalities are no longer exempted.

Your first concern is that the statute as amended impermissibly discriminates against the federal government and its instrumentalities and thereby violates the United States Constitution. Section 151.311 does not affect the traditional immunity from taxation afforded political entities and impose a tax directly on political entities; all that is involved is the tax on tangible personal property used by a contractor to improve real property. The federal government is not being singled out for the imposition of the tax; it is simply being treated in the same way that entities in the private sector similarly situated are treated. The amendment then does not impose a new tax on the federal government. It serves merely to remove the federal government from its heretofore favored status. The significance of these two aspects of the tax will be readily apparent when two recent United States Supreme Court decisions are analyzed.

It has long been held that a state may not impose a tax directly upon the United States or any of its instrumentalities. Mayo v. United States, 319 U.S. 441 (1943). Such immunity from taxation is grounded in the Supremacy Clause of the United States Constitution, article VI, clause 2. McCulloch v. Maryland, 4 Wheat. 316 (1819). No such direct tax is imposed here.

A corollary to this principle is that

> a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals. (Emphasis added).

United States v. Detroit, 355 U.S. 466, 473 (1958); see also Memphis Bank & Trust Co. v. Garner, 459 U.S. 392 (1983). A tax is not invalid on the basis of prohibited discrimination simply because its imposition has an effect upon the United States or because the federal government shoulders the entire burden of the economic levy. Alabama v. King & Boozer, 314 U.S. 1 (1941). Specifically,

> state taxes on contractors [performing work for the federal government] are constitutionally invalid if they discriminate against the Federal Government, or substantially interfere with its activities.

United States v. New Mexico, 455 U.S. 720, 735 n.11 (1982). Moreover,

> the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed

> equally    on    the    other    similarly    situated
> constituents of the State.

United States v. County of Fresno, 429 U.S. 452, 462 (1977).   At
issue, then, is whether the federal government or those with whom it
does business have been singled out for imposition of the tax.   We
conclude that they have not.

The proper test to be invoked in order to determine discrimina-
tion has not always been clear, nor have the cases been consistent.
The Supreme Court itself has recently indicated that cases in this
field have "been marked from the beginning by inconsistent decisions
and excessively delicate decisions."   United States v. New Mexico,
supra, at 730.   See Annots. 2 L.Ed.2d 441, 96 L.Ed. 263; see
generally, Annot. 44 L.Ed.2d 692.   For example, one line of cases set
forth an "economic burden" test, under which the validity of the tax
turned upon whether a tax imposed on a contractor was a substantial
burden upon the government.   See, e.g., Helvering v. Mountain
Producers Corporation, 303 U.S. 376 (1938); James v. Dravo Contracting
Company, 302 U.S. 134 (1937).   Other cases imposed a "legal incidence"
test, which determined whether the interest taxed is that of the
federal government or that of the contractor.   See, e.g., United
States v. County of Allegheny, 322 U.S. 174 (1944); Trinityfarm
Construction Company v. Grosjean, 291 U.S. 466 (1934).   Regardless of
the test imposed, it is clear that "in recent years the Supreme Court
has curtailed sharply the doctrine of implied delegated immunity."
United States v. County of Allegheny, supra, at 177.   See United
States v. Detroit, 355 U.S. 466 (1958); Oklahoma Tax Commission v.
Texas Company, 336 U.S. 342 (1949).   Two recent Supreme Court cases,
however, have removed much of the confusion and enunciated a clear
test.

In United States v. New Mexico, 455 U.S. 720 (1982), the court
restated the rules that implied constitutional immunity may not be
conferred merely because the tax has an effect on the United States or
even because the federal government bears the entire economic burden
of the levy (citing Alabama v. King & Boozer, supra); or because the
tax falls on the earnings of a contractor providing services to the
federal government (citing James v. Dravo Contracting Company, supra);
or because the tax is levied on the use of federal property in private
hands (citing United States v. City of Detroit, supra); or even in an
instance in which the private entity is using federal government
property to provide the government with goods (citing United States v.
Township of Muskegon, supra; City of Detroit v. Murray Corporation,
355 U.S. 489 (1958)) or services (citing Curry v. United States, 314
U.S. 14 (1941); United States v. Boyd, supra).   Nor may immunity be
conferred when a contractor is purchasing property for the federal
government, even if title to the goods vests in the United States
immediately upon shipment by the seller (United States v. New

Mexico, supra, citing Alabama v. King & Boozer, supra); or when the tax is directly paid with federal government funds (citing United States v. Boyd, supra). The court in New Mexico concluded:

> What the Court's cases leave room for, then, is the conclusion that tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.

455 U.S. at 592. This is a test of legal incidence to be applied when the taxable entity's relation to the federal government is at issue.

In Washington v. United States, 460 U.S. 536 on remand United States v. Washington, 707 F.2d 381 (9th Cir. 1983), the court upheld the scheme of sales taxes imposed by the state of Washington which operated in a way seemingly more disparate in its treatment of federal contractors than that proposed for imposition in Texas. Prior to 1941, all building contractors were treated as consumers for purposes of the state sales tax. All sales of tangible personal property to contractors, such as goods and materials used in construction, were subject to the tax regardless of the identity of the organization for which the construction was performed. The legal incidence of the taxes fell on the contractors; the suppliers who sold the materials collected the taxes and remitted them to the state. In 1941, the state altered the way in which its sales tax system affected contractors by amending its definition of "consumer." The landowners who purchased construction work from the contractor, rather than the contractor himself, were placed within the ambit of the statute. The legal incidence of the tax fell on the landowner, who paid a tax on the full price of the construction project rather than just on the price of the materials used to construct the project. The effect of the amendment was that contractors' labor costs and markups were included in the tax base, rather than merely the cost of the tangible personal property sold to the contractors. Obviously, this new system could not be applied to construction projects for the federal government because, as we noted above, the Supremacy Clause precludes any such imposition directly upon the federal government. Therefore, when the federal government was the landowner or "consumer", the state was not permitted to collect any tax on the sale either of tangible personal property to the contractor or of the finished building to the federal government. In 1975, the state sought to eliminate the effective tax exemption for construction purchased by the federal government by re-imposing the pre-1941 tax on contractors who work for the federal government. In other words, the tax was imposed on the

sale of non-federal projects by the contractor to the landowner and on the sale of materials to federal contractors. See 460 U.S. at 538-540.

The court upheld this scheme of taxation against an argument that it violated the Supremacy Clause. The federal government's principal argument was that the state singled out a federal activity for different tax treatment; because the state did not impose a sales tax on contractors who did not work for the federal government, the argument ran, it discriminated against the federal government and those with whom it dealt. Its focal point was the legal incidence of the tax and the disparity in where that incidence fell. In support of its argument, the United States relied principally upon Phillips Chemical Company v. Dumas Independent School District, 361 U.S. 376 (1960). The Supreme Court rejected the argument in Phillips that the tax was invalid merely because it treated those dealing with the federal government differently from those not dealing with the federal government. Because it has been suggested that Phillips controls the result in this opinion, we will turn to a discussion of that case.

In Phillips Chemical Company v. Dumas Independent School District, supra, the Supreme Court struck down a Texas statute which taxed lessees of property owned by the United States on the full value of the premises, while lessees of property owned by the state were taxed under another statute on the value of the leasehold interest only. The statute governing lessees of state-owned property, on its face, reached the lessees of all property exempt in the hands of its owner. As a result, only lessees of federal property were singled out for imposition of a greater tax burden. The court rejected the argument that the tax was invalid simply because it treated those who deal with the federal government differently from the manner in which it treated others. Id. at 379-81. The court declared that a determination whether a tax is discriminatory "requires 'an examination of the whole tax structure of the state.'" Id. at 383 (quoting Tradesmens National Bank v. Oklahoma Tax Commission, 309 U.S. 560, 568 (1940)). The Court, considering the effect of the entire tax scheme, declared:

> Here, Phillips is taxed . . . on the full value of the real property which it leases from the Federal Government, while businesses with similar leases, using exempt property owned by the State and its political subdivisions, are not taxed . . . at all. The differences . . . seem too impalpable to warrant such a gross differentiation. It follows that [the statute], as applied in this case, discriminates unconstitutionally against the United States and its lessee.

Id. at 387.

In rejecting the argument that Phillips controlled and required the overturning of the Washington tax statute, the Court in Washington distinguished Phillips; unlike the tax scheme attacked in Phillips, which effectively singled out for adverse treatment those engaged in business with the federal government, the Washington statute merely placed the federal government in a similar position as every private entity engaged in a construction transaction. The court declared:

> In this case, federal contractors are required to pay no greater tax than that placed on private buyers of construction work or passed on by them to their contractors. . . .
>
> The important consideration, therefore, is not whether the State differentiates in determining what entity shall bear the legal incidence of the tax, but whether the tax is discriminatory with regard to the economic burdens that result. . . . The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them.

460 U.S. at 544. And the court added in a footnote:

> The United States argues that it is inappropriate to consider the economic burden on the contractor and the owner together, and that we should focus solely on the tax the contractor is required to pay. When the case is viewed in this light, we are told it is apparent that federal contractors pay more than other contractors. The Court of Appeals apparently accepted this argument. [654 F2d] at 576.
>
> This way of looking at the problem is unrealistic. The appropriate question is whether a contractor who is considering working for the Federal Government is faced with a cost he would not have to bear if he were to do the same work for a private party. If he works for the Federal Government, the contractor is required to pay a tax on the materials he buys. The contractor will count the tax among his costs in setting a price for the Government. Depending on his bargaining power, he may pass some or all of the tax on to the Federal Government when he sets his price. If he works for a private party, the contractor is required to collect the tax from the purchaser and

> remit it to the State.  The purchaser will count the tax as part of the price of the building. Depending on his bargaining power, the contractor may reduce his price to make up for some or all of the tax the purchaser must pay.  <u>If the tax is the same, and the parties have the same bargaining power, the amounts the purchasers pay and the amounts the contractors receive will be identical in the two cases.  Thus, it makes no difference to the contractor (or to the purchasers) which of them is required to pay the tax to the State, as long as they have the opportunity to allocate the burden among themselves by adjusting the price.</u> (Emphasis added).

<u>Id.</u> at 536 n.4.  Thus, the Court shifted the issue for resolution from a disparity in legal incidence -- an indisputable element of the Washington tax scheme -- to a question of whether there was an impermissible disparity in the economic incidence of the tax.

Such a method of analysis is instructive in considering the effect of the amendment to section 151.311.  Prior to the recent amendment, all contractors paid sales taxes on tangible personal property, except that purchased for use in improving the real property of organizations which were themselves exempt.  The three kinds of organizations which were exempt were:  (1) the state and its political subdivisions; (2) the federal government and its instrumentalities; and (3) religious, educational, and public service organizations as defined by the code.

Unlike the tax scheme attacked in <u>Phillips</u>, which effectively singled out for adverse economic treatment those engaged in business with the federal government, the recent amendment to section 151.311 simply removed the federal government and its instrumentalities from the list of exempt organizations for the limited purpose of imposing a tax already imposed on contractors engaged in business in the private sector.  The amendment to section 151.311, like the 1975 amendment to the Washington tax scheme, simply removes the federal government and those with whom it deals from favored status and treats them like similarly situated entities in the private sector.  Insofar as this change involves only the legal incidence of the tax, it is not determined under the Court's test in <u>Washington v. United States</u>.

In <u>Washington</u>, the Court compared the federal government and its contractors with the private sector and its contractors and concluded that if the burdens imposed on each, direct as well as indirect, are equal, no problem of impermissible discrimination will arise.  As the opinion states:

> [T]he _opportunity_ for the parties to allocate the
> economic burden of the tax among themselves [is]
> sufficient.   No more should be required here.
> (Emphasis in original).

_Id._ at 460 U.S. at 544.   The amendment to section 151.311, like the
statute in _Washington_, imposes exactly the same burden, direct as well
as indirect, on the federal government and its contractors that it
places on private businesses and their contractors.   Accordingly, we
conclude that the amendment does not impermissibly discriminate
against either the federal government or those with whom it deals, in
violation of the Supremacy Clause of the United States Constitution.

Your second question asks whether the amendment unconstitu-
tionally discriminates between contractors who improve realty for the
federal government under "lump sum" contracts and those who do so
under "separated" contracts.   "Separated contract" is defined in your
regulations as follows:

> (5)   _Separated contract_ -- A contract in which
> the agreed contract price is divided into a
> separately stated agreed contract price for
> materials and a separately stated agreed contract
> price for skill and labor.   If prices of materials
> and labor are separately stated, the fact that the
> charges are added together and a sum total given
> is irrelevant.   Cost-plus contracts are generally
> regarded as separated contracts.

34 Tex. Adm. Code §3.291(a)(5).   "Lump sum contract" is defined as:

> (4)   _Lump-sum contract_ -- A contract in which
> the agreed contract price is one lump-sum amount
> and in which the charges for materials are not
> separate from the charges for skill and labor.
> Separated invoices issued to the customer will not
> change a lump-sum contract into a separated
> contract unless the invoices are incorporated into
> the contract and specifically amend the original
> contract.

Comptroller of Public Accounts, 8 Tex. Reg. 1585 (1983) adopted, 8
Tex. Reg. 2280 (1983) (amending 34 Tex. Adm. Code §3.291(a)(4)).

The court in _Washington_ has made clear that any distinction
between these two types of contract is a distinction without a
difference:

> The important consideration, therefore, is not
> whether the State differentiates in determining
> what entity shall bear the legal incidence of the
> tax, but whether the tax is discriminatory with
> regard to the economic burdens that result. . . .

> The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them. [Footnote omitted].

460 U.S. at 544-545. See also Washington, supra (dissenting opinion), at 274. We conclude that section 151.311 does not impermissibly discriminate between contractors who improve realty for the federal government under "lump sum" contracts and those who do so under "separated" contracts.

### S U M M A R Y

Section 151.311 of the Tax Code, as amended, does not impermissibly discriminate against either the United States, its agencies, and its instrumentalities or between contractors who improve realty for the federal government under "lump sum" contracts and those who do so under "separated" contracts.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Nancy Sutton