## COMMISSIONER OF INTERNAL REVENUE v. FISKE'S ESTATE.

### No. 7846.

Circuit Court of Appeals, Seventh Circuit.

May 23, 1942.

488

J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., Samuel O. Clark, Jr., and J. Louis Monarch, Asst. Attys. Gen., and Newton K. Fox, Sp. Asst. to Atty. Gen., for petitioner.

Charles C. Parlin, John A. Reed and Wright, Gordon, Zachry, Parlin & Cahill, all of New York City, for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

W. M. L. Fiske, a citizen of the United States, was vice-president of Dillon, Read & Company, investment bankers, from 1922 until his death in New York City on October 5, 1940. He resided in Chicago, Illinois, from 1906 until 1924, when he went to Paris, France, to take charge as manager of the Company's Paris office. His wife, son, and daughter accompanied him and there they resided in an apartment which he furnished under leases for terms of three or more years. The daughter returned to the United States after her marriage in 1929. The son, after graduating from college in 1930, worked in the New York and London offices of Dillon, Read & Company.

Fiske made four trips to the United States while residing in France. On the first three he arrived for the Christmas season, and returned in January or February. Early in December, 1935, he and his wife came to visit their daughter at San Mateo, California, where the daughter had leased for them, for three months, a furnished house. They intended to return to Paris at the end of that period. In January, 1936, Fiske became ill, and was forced to go to a hospital for treatment for several weeks. Thereafter, until October, 1936, he was cared for in the house at San Mateo, when he left for New York intending to sail for France. Upon his arrival in New York he had a recurrence of the illness and was not able to return to Paris until March, 1937. Upon his return to Paris, he resumed and continued his duties as manager until May, 1940, when he was forced to leave because of the German invasion.

While away from the United States Fiske used a United States passport. In his application for a passport in November, 1936, he stated that he was domiciled in the United States and that his permanent residence was 134 South LaSalle Street, Chicago, Illinois.

While sojourning in California, the apartment in Paris was ready for occupancy, his servants living therein. In August, 1940, he decided to reside permanently in the United States and made plans to have his household furnishings removed from France.

During his stay in the United States from December, 1935, to March, 1937, he was completely incapacitated, continually under the care of physicians, and performed no service for Dillon, Read & Company, but was paid $37,400 as salary for the year 1936.

Fiske, in his income tax return for the year 1936, did not include the $37,400 received as salary. The petitioner, as Commissioner of Internal Revenue, determined that this income was taxable to Fiske and found a deficiency in taxes against him. Respondent, as executor of the last will and testament of W. M. L. Fiske, deceased, filed a petition to review the Commissioner's determination. The Board of Tax Appeals held that Fiske was a bona fide nonresident of the United States during all of the year of 1936, and that the amount in question was paid to him as compensation for personal services actually rendered outside of the United States and was exempt from taxation.

The question is whether Fiske's salary for 1936 was subject to the payment of an income tax.

Before discussing the cases claimed to be applicable, it is well that we dispose of respondent's contention that the conclusion of the Board that Fiske was a bona fide nonresident of the United States during 1936 is not reviewable here, since that represents a finding of fact.

In our case, the facts are not in dispute, and the problem is one of construction. In such situations, the courts have repeatedly held that where the ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact, it is subject to judicial review. Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32, and Deputy v. Du Pont, 308 U.S. 488, 499, 60 S.Ct. 363, 84 L. Ed. 416.

By § 116(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 116(a), Congress granted an exemption from gross income to an individual citizen of the United States who is a bona fide nonresident of this country for more than six months during the taxable year, for amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in § 25(a).

Deductions from gross income are allowed as a matter of legislative grace,

White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172, and are strictly and narrowly construed, Pacific Co. v. Johnson, 285 U.S. 480, 491, 52 S.Ct. 424, 76 L.Ed. 893; Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; and United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40. In construing a claimed exemption, we must consider the objects and purposes of the statute and give it such a construction as will carry out the true intent and meaning of Congress, Helvering v. New York, etc., Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361, and in so doing the legislative history and the administrative practice are factors to be considered. United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893.

■ It is agreed that § 116(a) was intended to stimulate foreign trade, and to relieve our citizens resident in foreign countries, engaged there in the promotion of American foreign trade for more than six months of the taxable year, from tax upon the income which they earned in the foreign country. In construing the phrase "bona fide nonresident of the United States for more than six months during the taxable year," the Bureau of Internal Revenue[1] has interpreted it as applying to any American citizen actually outside the United States for more than six months during the taxable year, and this construction finds support in the legislative history of the act.[2]

Respondent claims that Paris was Fiske's bona fide residence and that when he came to the United States in 1935 he had an intention to return to Paris, which intention remained with him until his return to Paris in March, 1937.

■ Residence is the place of abode, whether permanent or temporary, Penfield v. Chesapeake, etc., Co., 134 U.S. 351, 356, 357, 10 S.Ct. 566, 33 L.Ed. 940, a physical fact, Matter of Newcomb's Estate, 192 N.Y. 238, 84 N.E. 950, 954, and means where a man abides or lives, Hunter v. Bremer, 256 Pa. 257, 100 A. 809, 811, Ann. Cas. 1918A, 152, and so applying the tests enumerated in the cases cited, we believe that Congress was not concerned with the question where a taxpayer had his permanent residence, but rather intended the

act to apply to any American citizen actually outside of the United States for more than six months during the taxable year, engaged in the promotion of American foreign trade, and it is no answer to say that it was at all times Fiske's intention to return to Paris and that he was prevented from carrying out this intention because of illness. cf. District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. ——. See also State of Texas v. State of Florida, 306 U.S. 398, 424, 425, 59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179.

We now consider respondent's contention that the salary paid to Fiske was exempt because it was a payment for services rendered without the United States.

■ The Board found that Fiske was paid his salary for the year 1936. It also found that Fiske "performed no service of any kind for Dillon, Read & Co. during that year." The Board, however, made no finding as to where the compensation was received. Of course, we have not the power to make a finding on that question, even if it is apparent from the general findings that the salary was received in the United States from an American firm resident in New York, Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343 and Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346.

Section 119(c) (3) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1693, 26 U.S. C.A. Int.Rev.Code, § 119(c) (3), defines income from sources without the United States as compensation for personal services performed without the United States. Therefore, as we view the case, the question is whether Fiske received the salary as compensation for personal services performed without the United States.

■ In support of its contention respondent cites Muhleman v. Hoey, 2 Cir., 124 F.2d 414, holding that the amount received was under the statute, income from sources without the United States. That case is no support to respondent's contention, since the amount paid to the taxpayer in that case was paid to him while he resided in London, England, and for services performed while a resident of London. It is clear before the respondent may claim as exempt the amount received by Fiske, the income must be "for per-

---

[1] G.C.M. 9848, X-2 Cum.Bull. 178, 179 (1931).

[2] House Rep. No. 1. 69th Cong. 1st Sess. p. 7. Sen.Rep. No. 52, 69th Cong. 1st Sess. pp. 20-21. House Conf.Rep. No. 356, 69th Cong. 1st Sess, p. 33.

sonal services performed without the United States during the taxable period," and the burden of proving that fact devolved upon the respondent, Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623. This it failed to prove.

The order of the Board of Tax Appeals is reversed and the proceeding remanded, with instructions to compute the income taxable to the taxpayer and determine the deficiency in accordance with the views expressed in this opinion.

MAJOR, Circuit Judge (dissenting).

I agree with the conclusion respondent was a bona fide non-resident of the United States during the taxable year, is one of law subject to judicial review. It is my opinion, however, that as a matter of law, the Board reached the correct conclusion and its decision should be affirmed.

The reasons given by the Board in its opinion for its decision are of such a convincing character as to justify their inclusion here. It said: "* * * He was not a mere visitor, transient, or temporary sojourner in France. He went there to live and to conduct the business of Dillon, Read & Co. for a long period of time. He had been there for more than ten years when he left in the latter part of 1935 for a short visit to the United States. He had an established place of abode or residence in France for a number of years before, during, and after 1936. Apparently he had an intention to return permanently to the United States eventually, but his departure in 1935 was not to carry out any such intention. On the contrary, his intention at that time was to continue to reside in France for a lengthy, if indefinite, period of years. He came to the United States in December 1935 purely as a visitor and temporary sojourner. He did not intend to take up residence in this country or to discontinue his residence in France. He left all of his personal belongings and household furnishings in France, with the exception of those personal belongings which he needed for the period of his visit. He had no household furnishings in this country and he acquired none. He intended to go back to France and use the household furnishings in his French residence. He had no permanent place of abode in this country and he did not intend to acquire any at any time during his visit. The furnished house in San Mateo was rented for a few months only to accommodate him during his visit. He was prevented by illness from returning to his residence in France, but he retained his intention to return there just as soon as his health would permit. Eventually, he did return and he continued to reside in France for several years. His business was in France, not here. The income was earned as a result of services performed outside the United States. The fact that he was actually physically present in the United States during the entire calendar year 1936 loses its importance in the face of his French connections, his intention to return to France, his lack of intent to establish any residence in the United States, the absence of any residence here, and the circumstances which prevented him from carrying out his intention to return to France."

The Board, properly, in my opinion, failed to find anything either in the Legislative history of the act or in the holdings of the Bureau of Internal Revenue which aids in the solution of the involved question. Equally impotent are the cases relied upon by the majority as authority for reversing the Board's decision. The recent cases of State of Texas v. State of Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817, 121 A.L.R. 1179, and District of Columbia v. Murphy, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. ——, tend to support rather than contradict the Board's decision. In each of these cases the court decided the domicile of the involved taxpayers. In the Texas case there was a contest between Massachusetts and other states as to the domicile of the taxpayer as the basis for death taxes. In deciding that his domicile was Massachusetts, notwithstanding that he had large interests, and spent much of his time in other states, the court, 306 U.S. on page 425, 59 S.Ct. on page 576, 83 L.Ed. 817, 121 A.L.R. 1179, said: "* * * When he had established himself there all the circumstances of his life indicated that his real attitude and intention with respect to his residence there were to make it his principal home or abiding place to the exclusion of others. * * *".

The Murphy case involved the question of the domicile of the certain taxpayers within the meaning of the Income Tax Act which imposed a tax on "the taxable income of every individual domiciled in the District of Columbia." D.C.Code Supp. V. T. 20, § 980a(a). The court discusses numerous tests to be applied in making such

determination, the gist of which is contained in the statement on page 454 of 314 U.S., on page 309 of 62 S.Ct., 86 L.Ed. ——: "On the other hand, we hold that persons are domiciled here who live here and have no fixed and definite intent to return and make their homes where they were formerly domiciled. * * *"

Under these authorities there would seem to be little, if any, question but that the place of domicile of respondent, during the taxable year, was in France. Recognizing the distinction sometimes made that the word "residence" is of more limited scope than the word "domicile" (see page 451 of the Murphy case in 314 U.S., 62 S.Ct. 303, 86 L.Ed. ——), I am of the view that the domicile or home of a person ordinarily is a material factor to be considered in determining his residence. Under the circumstances of the instant case, it is well nigh conclusive.

I assume there could be no question but that respondent was a bona fide non-resident of the United States, both prior and subsequent to the year 1936. Conversely stated, he was a bona fide resident of France. As pointed out, I think there can be no question, under the recent decisions of the Supreme Court above referred to, but that his domicile was also in France. Inasmuch as his domicile was largely a matter of purpose and intent, it follows that such domicile was maintained during the year 1936. The question then arises as to when and how this admittedly non-resident altered his status and became a resident of the United States. If such a transformation was accomplished, it was without intent or purpose on his part, but by circumstances over which he had no control, and by separating his residence from that of his established domicile.

In its brief, petitioner argues: "* * * 'Residence' is the place of abode whether permanent or temporary. It is the same as habitancy, the locality or place where one is personally present and living, the place of bodily presence, a physical fact. * * *"

The opinion appears to embrace this argument. I think it is a fallacy and certainly so as applied to the facts of this case. If this position is tenable, then a citizen would be in jeopardy of having his residence changed when he left home for a visit or on business. The change might become actual if his absence was longer than anticipated, even though occasioned by circumstances over which he had no control. So far as I am aware, no court has placed such a narrow interpretation upon the term "residence" even though it has been recognized as a term more limited than that of "domicile." A person's residence is not determined by the whereabouts of his suitcase.

I also disagree with the treatment which the opinion accords the question: "Was the income received from sources without the United States for services performed without the United States?" It must be true that the income received by respondent in 1936 was not for personal services rendered either in the United States or France during that year. This is evident from the fact that he was ill during that entire period. The opinion, so I think, erroneously interprets the applicable provision to require that the services performed without the United States be "during the taxable period." These words do not appear in the statutory provision and it has been expressly held in Muhleman v. Hoey, 2 Cir., 124 F.2d 414, 415, that it is immaterial whether or not the services were rendered during the year for which the income was earned.

Petitioner is in a precarious situation. He dare not argue that the money received by respondent was a gift, as that would make it exempt. He merely argues that no services were rendered for which the money was received. In my judgment the Board logically disposed of petitioner's contention in this respect as follows: "* * * Although the decedent was away from his place of business and was too ill to perform his duties during 1936, nevertheless, he had rendered services in the past, he was expected to continue to render services in the future, and his employer continued his salary during his illness. Cf. Lucas v. Ox Fibre Brush Co., 281 U.S. 115 [50 S.Ct. 273, 74 L.Ed. 733]. His place of employment was in France. He served the company only by rendering personal services. Apparently, the decedent had developed an office organization and a clientele for his employer so that the business could go on even in his absence. His employer wanted to hold him as an employee. It is difficult to draw any other conclusion from the fact that the employer paid him the $37,400 in 1936. * * *"