## DOWNS v. COMMISSIONER OF INTERNAL REVENUE.

## HOOFNEL v. SAME.

### Nos. 11578, 11593.

Circuit Court of Appeals, Ninth Circuit.
Jan. 27, 1948.

Writ of Certiorari Denied June 1, 1948.

See 68 S.Ct. 1346.

---

Robert A. Waring, of Los Angeles, Cal., for petitioners.

Theron L. Caudle, Asst. Atty. Gen., Sewall Key, Berryman Green and Newton Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The cases of Downs v. Commissioner, No. 11,578, and Hoofnel v. Commissioner, No. 11,593, here from the Tax Court on review, call for decision, mainly, upon the same basic principles. By general agreement they were tried together to the Tax Court, and were argued together here, although the cases are separately briefed. We shall dispose of the two cases in one opinion.

The Commissioner of Internal Revenue found Downs delinquent in his income taxes, due for the year 1943, and Hoofnel delinquent in his income taxes for the years 1942 and 1943. The Tax Court upheld the Commissioner in both instances.

In 1942 Lockheed Aircraft Corporation entered into a contract with the United States Government, whereby the corporation agreed to organize, equip and operate an aircraft depot in Northern Ireland and Britain in the prosecution of World War II, and a large number of skilled men from the United States, including petitioners, were employed by Lockheed under contract and transported to sites in the British Isles.

Preceding the signing of contracts, each petitioner filled in an application form, answering questions. Each answered that he was willing to be sent to any part of the world, maybe in combat zone, by hazardous travel, for a period longer than two years, and that he understood he could not take his wife or any member of his family along.

The contracts recited that the services would be related to the prosecution of the war (World War II), and that they would be performed in foreign countries in war zones amid dangers and under difficult conditions. Employees were to receive monthly salaries, payable semi-monthly, 10 percent directly and ninety percent to be deposited in a United States bank. The services were to be faithfully performed under regulations and requirements of the employer, as well as those of the United States Government "and all civil or military laws and regulations in effect from time to time at the place or places of duty * * *." Employees were prohibited from divulging information connected with the war activities, and were to go and come when and as directed by the employer and to journey by

any method of transportation chosen by the employer. The work hours were not limited or regular. Personal baggage was restricted to that permitted by the employer. All maintenance was to be found by the employer. Termination of the contract prior to its expiration date was practically at the will of the employer, except that he could not act arbitrarily. A visa was issued to each petitioner as an employee of Lockheed without time limitation. The visas under British law permitted petitioners to remain on British territory for purposes disclosed in the contract. Downs and Hoofnel were transported to, and stationed at, different air bases in the British Isles during the period of their absence from the United States.

It will be seen that persons employed under the contract, and who performed services under it, were admitted to the foreign country for specific work directly related to the United States Government's war efforts, and that they were handled, controlled and restricted much the same as military personnel.

Petitioner Downs left the United States for the British Isles on June 30, 1942, landing there several weeks later. Petitioner Hoofnel, on June 30, 1942, boarded H. M. S. Maloja, a British ship under British officers, berthed in New York harbor, to be transported to the same destination. Due to fear of enemy submarines, the ship delayed sailing until the morning of July 1st, and landed some time later in England. While in New York harbor, Hoofnel was not permitted to leave the vessel or make contact with the shore in any manner.

The contracts were extended by agreement of the parties until May 1, 1943, at which time new contracts of the same nature were entered into by petitioners.

Petitioners returned to the United States in July, 1944.

No application was ever made by either of them for citizenship in Britain or Northern Ireland, and at all times they had intended to return to the United States immediately upon the termination of their services under the contracts; indeed, they were under legal compulsion of leaving the foreign country upon the termination of their services. No taxes were paid by them to any sovereign government, and none appears to have been levied against them.

Downs filed an income tax return for the year 1943 on October 9, 1944, in which he excluded from his gross income the sum of $5,438.50, which he had received during the year 1943, on the ground that during that year he was a *bona fide resident of a foreign country* within the meaning of § 116 of the Internal Revenue Code, as amended by § 148 of the 1942 Revenue Act.[1]

Hoofnel, through his returns for 1942 and 1943, claimed a like exemption upon a similar basis for the period June 30, 1942, to July 12, 1944. The exemption for 1942 was claimed under the earlier statute,[2] and

---

[1] Section 116 of the Internal Revenue Code, as amended by the Revenue Act of 1942, c. 619, 56 Stat. 798, § 148(a), 26 U.S.C.A. Int.Rev.Code, § 116.

"Exclusions from gross income

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter.

"(a) Earned income from sources without the United States.

"(1) Foreign resident for entire taxable year. In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such

amounts would constitute earned income as defined in section 25(a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection." 26 U.S.C.A. Int.Rev.Code, § 116 (a) (1), as amended.

[2] 1942 Amendment. Subsec. (a), prior to Act Oct. 21, 1942, read as follows: "(a) Earned income from sources without United States. In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as de-

the exemption for 1943 under the statute as amended.

The question for decision, common to both cases, is whether the taxpayers were bona fide residents of a foreign country or countries during the taxable year 1943 and, thus, entitled under § 116(a) of the Internal Revenue Code, as amended by § 148 of the Revenue Act of 1942, to an exemption for salary received from sources without the United States?

■ It is clear that petitioners were not *domiciled* in a foreign country. Domicile, however, is not decisive of the question of residence. Domicile and residence have been variously defined. The meaning of the word "resident" is not always exactly the same, and its true meaning in a statute must be understood in connection with its context and with the legislative purpose.

Prior to the amendment in 1942, the law exempted from tax the gross income of an individual citizen of the United States, who was a bona fide *non-resident* of the United States for more than six months during the taxable year. The purpose of the statute was to stimulate foreign trade, and to relieve United States citizens, resident in foreign countries, for periods of more than six months of the taxable year from taxation on income earned in the foreign country. The phrase "bona fide non-resident of the United States," as used in the statute, has been interpreted as including any American citizen *actually outside the United States* for more than six months during the taxable year. See Commissioner of Internal Revenue v. Fiske's Estate, 7 Cir., 128 F.2d 487, certiorari denied 317 U.S. 635, 63 S.Ct. 63, 87 L.Ed. 512.

In 1942, a change in the statute reversed the situation, and, instead of exempting taxes because the citizen was a "non-resident" for half of the tax year, it exempted the citizen from the tax when he could satisfy the commissioner that he was a bona fide *resident* of a foreign country or countries during the entire tax year.

Treasury Regulation 111, § 29.111-1, provides, inter alia, that "Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the *principles* of sections 29.211-2, 29.211-3, 29.211-4 and 29.211-5 relating to what constitutes residence or non-residence in the United States, as the case may be," of an individual. (Emphasis added.) All parties to the appeal agree that Regulation 111, § 29.211-2, shall be specially considered.[3] This regulation specifically relates to aliens in the United States and what circumstances constitute residence. The principles of this regulation are applicable to United States citizens present in foreign countries on the question of residence.

---

fined in section 25(a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection." (26 U.S.C.A. Int.Rev.Code, § 116.)

[3] § 29.211-2. Definition.—A "nonresident alien individual" means an individual—

(a) Whose residence is not within the United States;

(b) Who is not a citizen of the United States. The term includes a nonresident alien fiduciary.

An alien actually present in the United States who is not a mere transient or sojournor is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

Upon this statement of fact and upon the statutes and regulations referred to, the Commissioner held, and the Tax Court agreed, that the petitioners, while abroad, were not residents of a foreign country or countries, and that they did not qualify for the exemption.

■ But before we apply the indicated test to the facts in the cases, and in preparation for applying it, we will revert for a moment to the exemption statute as it existed prior to the Amendment of 1942. If the taxpayer was a bona fide non-resident of the United States for more than six months of the tax year, he enjoyed the exemption. Strictly speaking, it will be observed, that it was not necessary under the statute, before amendment, to prove that the taxpayer was a resident of any place. The negative that he was a non-resident of the United States was the issue. Proof that he was a resident of a foreign country would not be conclusive, for as held in Matter of Newcomb's Estate, 192 N.Y. 238, 250, 84 N.E. 950, 954, a person may have two places of residence. "Resident" and "non-resident," says Judge Dobie in C.I.R. v. Swent, 4 Cir., 155 F.2d 513, 515, certiorari denied 329 U.S. 801, 67 S.Ct. 491, " * * * are very slippery words, which have many and varied meanings." In the Swent case, in which the original section was being construed, the issue was whether Swent, who had been in Mexico and, as well, in the United States during the tax year, was a non-resident of the United States. Proof that he was a resident of Mexico for more than six months or for 12 months of the tax year would not, under the Newcomb's case, have settled the issue, for non-constat he may have had a residence in the United States as well. At any rate, the word "resident" and its counterpart "non-resident" proved too "slippery" for judicial certainty, and the courts looking to the intent of the statute decided that actually its purpose was to exempt income earned by persons abroad when such persons had been absent from this country more than six months of the tax year. Thus, proof of mere absence from the United States was held to establish the fact that "non-residence" had been established and the statute was satisfied.

After the vicissitudes through which the original exemption section had passed, it is more than a fair assumption that when its amendment was under consideration, the law makers, had they intended mere absence from the United States during the tax year to bring the exemption into play, would have said so in simple non-misunderstandable language.

Yet petitioners' position here, when reduced to the ultimate, is an argument that mere presence other than sojourning in the foreign lands for the full tax year ripens the right to the exemption. The words of Senator George, Chairman of the Senate Committee on Finance, belies such intention. (Hearings before the Committee, H.R. 7378, 77th Cong., 2d Sess., Vol. 1, p. 743.) He explained that it was not intended to eliminate § 116(a), the original exemption section, but to amend it so that a " * * * non-resident American citizen who establishes a home maintains his establishment and is taking on corresponding obligations of the home in any foreign country" may enjoy the exemption. And " * * * so that technicians, American citizens who are merely temporarily away from home, could be properly reached * * * for taxation purposes." This was said in 1942, and was in reference to the very class of persons to which petitioners belonged.

■ A casual reading of the regulations, which upon principle are to be applied to the issue of residence, shows conclusively that the Treasury Department of the government under whose authority tax statutes are enforced agreed with Senator George as to the purpose of the act and that mere presence of the individual for the given time in foreign countries was not sufficient to entitle him to the exemption. Section 29.211-2 unquestionably is drawn with the understanding that unless the United States citizen abroad "makes his home temporarily" in the foreign country, that is, as we see it, identifies himself in some degree with its customs and lives under and within such customs, he is not a resident of the foreign country in which he is staying temporarily. See Carstairs v. United States, D.C., E.D. Pa.1936, 75 F.Supp. 683, where a district

court rejected the commissioner's interpretation of Section 116(a).

It is true that there appears to be some inconsistencies in the regulation (§ 29.211-2). Despairing of being able to satisfactorily define the term "resident," the Treasury Department has resorted to a sort of inclusion—exclusion of the words "resident" and "transient" through statements of hypothetical facts. The word "transient" is not mentioned in the act, and its use appears somewhat confusing. However, the regulation is to be used in *principle* only.

■ The simple recitation of the facts in these cases in connection with the foregoing analysis seems to us to unequivocally establish that petitioners were never "residents" of the foreign countries, in which they stayed during the tax year of 1943, and, therefore, do not qualify for the exemption of taxes as claimed by them.

■ The issue in the case not common to both petitioners pertains to petitioner-Hoofnel's 1942 taxes under § 116(a) prior to the amendment. Hoofnel was not out of the country for more than six months of the 1942 tax year, if while he was on the British ship at the New York pier ready to sail but for enemy submarine threats he was inside the United States. After full consideration, we have concluded that the only supportable construction of the statute, consistent with its purpose, is the literal one. That is, the physical presence of the individual as to geographical United States must control. The commissioner and the Tax Court held the same view. It follows that Hoofnel was not *outside* the United States for more than six months of the tax year involved and that the exemption does not apply.

The facts of these cases differentiate them from the recent case of Swenson v. Thomas, decided in the Fifth Circuit on December 4, 1947, 164 F.2d 783, since the instant case was submitted for decision.

A strong argument can be made in support of another reason for holding that the tax exemption does not cover cases for the year 1942. The exemption provided in the statute before its amendment was intended to encourage foreign trade. Neither Hoofnel nor Downs was abroad on foreign trade; their situation had no relation to peace time economics. Their activities were wholly those of war performed in camps of the United States Government located in a foreign country for strategic purposes under limited consent of a foreign power. In practically all but geography, petitioners were on American soil, actually under the American flag, performing services for the benefit of the American government, using materials furnished them by the American government through the American contractor—Lockheed. It is questionable whether the original exemption statute reached the situations in which petitioners found themselves abroad. Court decisions, however, that mere absence from the United States entitled the taxpayer to the exemption, probably made the amendment necessary in order that doubt as to the duty of men in the status of petitioners to pay the tax would be resolved. See C. I. R. v. Fiske's Estate, 7 Cir., 128 F.2d 487, certiorari denied, 317 U.S. 635, 63 S.Ct. 63, 87 L.Ed. 512.

Affirmed.