FRANK SOUZA AND CECELIA SOUZA, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66156. Filed February 8, 1960.

*Philip Crittenden, Esq.*, for the petitioners.
*Michael P. McLeod, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The first issue presented is whether, as petitioner contends, he was present in Peru for a period of 510 days during an 18-month period so as to entitle him to exclude under the provisions of section 911(a)(2) [1] of the Internal Revenue Code of 1954,[2] from

[1] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

* * * * * *

(2) PRESENCE IN FOREIGN COUNTRY FOR 17 MONTHS.—In the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or an agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period; * * *

[2] So far as pertinent here the provisions of section 911(a) of the 1954 Code are the same in effect as those of section 116(a) of the 1939 Code. References to the one are equally applicable to the other, and cases interpreting the one are equally interpretive of the other.

gross income earnings he received from sources outside the United States. Respondent has determined that petitioner was not present in Peru or any foreign country when he was fishing more than 3, but less than 200, nautical miles from the shores of Peru. Petitioner argues that because Peru claimed sovereignty extending 200 miles into the Pacific Ocean from its shores, performed acts under color of such claim, and subjected petitioner to extensive regulation under such claims, he was within the territorial waters of and, consequently, in Peru. Alternatively, petitioner argues that should we hold against him as to the limits of the territorial waters of Peru, the facts and circumstances surrounding petitioner's presence in the waters within 200 miles of Peru were such as to render him present in Peru.

Petitioner's argument that because he was fishing in the waters within 200 miles of Peru over which that nation claimed sovereignty, he was present in the territory of Peruvian sovereignty, cannot prevail. It is stipulated by the parties "[t]hat the Executive Department of the Government of the United States does not recognize the claim of Peru to sovereignty over the seas to a minimum of 200 miles from its coastlines, but recognizes the sovereignty of Peru over its waters to a distance of three miles from its coastlines." Further, we take judicial notice [3] of the facts that the executive branch in its conduct of foreign affairs has traditionally denied asserted extensions by foreign countries of territorial waters beyond 3 miles,[4] and that the executive branch protested the extension claimed by Peru.[5] Congress, also, denied such claims in enacting a bill, 22 U.S.C. sections 1971–1976, for the protection of American-flag vessels seized by foreign countries.[6]

These facts preclude us from finding that petitioner was within the territorial waters of Peru when he was fishing in waters within 200

---

[3] "All courts of justice are bound to take judicial notice of the territorial extent of the jurisdiction exercised by the government whose laws they administer, or of its recognition or denial of the sovereignty of a foreign power, as appearing from the public acts of the legislature and executive, although those acts are not formally put in evidence, nor in accord with the pleadings." *Jones* v. *United States*, 137 U.S. 202, 214.

[4] "We have made it clear from the beginning that in our view the 3-mile rule is and will continue to be established international law, to which we adhere. * * * Furthermore, we have made it clear that in our view there is no obligation on the part of states adhering to the 3-mile rule to recognize claims on the part of other states to a greater breadth of territorial sea." Closing statement by the chairman of the United States delegation to the United Nations Conference on the Law of the Sea, 38 Dept. State Bull. 1110, 1111.

[5] See 32 Dept. State Bull. 935.

[6] See S. Rept. No. 2214, 83d Cong., 2d Sess. (1954), which states, *inter alia:*

"The traditional policy of the United States is to support the principle of the freedom of the seas, and to this end this country does not recognize claims to jurisdiction over alleged territorial waters greater in breadth than three marine miles from the coast. * * * [T]he need for legislation at this time has developed from seizures of American-flag fishing vessels which have taken place in the last several years as the result of extravagant territorial claims which are strictly contrary to the traditional position of the United States with regard to the seaward limits of national jurisdiction."

miles of the Peruvian coastline but not within 3 miles of the Peruvian coastline. The governing principle of law has an early judicial origin and is rooted in the basic concept of the division of powers upon which the Constitution of the United States is founded. The determination of the boundaries of nations is a matter of foreign affairs which is the function of the political departments of government, not the judicial. *Foster* v. *Neilson*, 2. Pet. 253, 307 (1829). Courts may not grant that recognition of an alleged territorial extension of sovereignty by a foreign country which the executive branch of government withholds. *Williams* v. *Suffolk Insurance Co.*, 13 Pet. 415, 420 (1839). Petitioner was not physically present within the territorial limits of Peru, when fishing in waters beyond 3 miles from the Peruvian coastline. Petitioner's main contention in this respect is not sustained.

Turning to petitioner's alternative argument that the facts and circumstances surrounding his presence in waters within 200 miles of the Peruvian coastline justify a finding that he was constructively present in Peru, despite our conclusion that Peruvian territorial waters extend only 3 miles from that nation's coastline, we find that petitioner cannot prevail on this ground. The substance of petitioner's contention is that because his operations were based in Peru, and were at all times subject to extensive de facto, if not de jure, regulation by the Peruvian Government so long as he fished within 200 miles of Peru, he was constructively present within the territorial limits of Peru although physically outside those limits. In construing an earlier provision[7] for the exclusion of earnings abroad from gross income, it was concluded that the physical presence of the taxpayer was the factor determinative of his geographical location. *Hoofnel* v. *Commissioner*, 166 F. 2d 504 (C.A. 9), affirming 7 T.C. 1136, certiorari denied 334 U.S. 833. In its ordinary acceptation, the word "present" connotes physical location. Cf. Webster's New International Dictionary (2d ed. rev. 1950). Only by the operation of some amiable legal fiction can one who is physically 197 miles outside a country be present in that country. We do not find that Congress intended that the metaphysical concept of constructive presence should prevail in such a situation.

We hold, therefore, that petitioner has failed to prove that he was present in Peru during 1953 and 1954 for 510 days during 18 consecutive months within the intendment of section 911(a)(2).

The second question arising herein is whether petitioner was a bona fide resident of Peru for an uninterrupted period which includes all

---

[7] Sec. 116(a), I.R.C. 1939.

of 1954 within the provisions of section 911(a) (1) [8] of the 1954 Code.[9] This affects only the taxable year 1954. The statute does not define the term, "bona fide resident." In Regulations 118, section 39.116–1(a) (2), the term is explicated by reference to sections 39.211–2 through 39.211–6, relating to the residence or nonresidence of aliens in the United States. An apt paraphrasing of section 39.211–2 (formerly section 29.211–2, Regulations 111), rendered in *Weible* v. *United States*, 244 F. 2d 158 (C.A. 9), as it applies in determining the residence or nonresidence of citizens of the United States in foreign countries, is set forth marginally.[10] Within the intent of section 911(a) (1), a taxpayer need not be a domiciliary of a foreign country or countries to qualify as a resident thereof. *Weible* v. *United States*, *supra*. Conversely, mere physical presence in a foreign country for the specified period of time does not qualify a taxpayer as a resident of a foreign country within the ambit of section 911(a) (1). *Downes* v. *Commissioner*, 166 F. 2d 504 (C.A. 9), affirming 7 T.C. 1053. If the latter were not so, the enactment would have been an empty deed and the words of the report by the Senate Finance Committee [11] meaningless phrases.

---

[8] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in subsection (b)) attributable to such period; * * *

[9] See footnote 2, *supra*.

[10] "Section 29.211–2 being the definition of a nonresident alien we have taken the liberty of rewording and restating it so as to make it directly applicable to a bona fide resident of a foreign country, as the expression is used in Section 29.116–1. To do this we have excluded certain of the words appearing in Section 29.211–2 (*which appear in brackets*) and have inserted appropriate conforming words (*appearing in italics*).

"'(An Alien) A *citizen of the United States* actually present in (the United States) *a foreign country or countries* who is not a mere transient or sojourner is a *bona fide* resident of (the United States) *a foreign country or countries* for the purposes of the *income tax exemption provided for in Section 116*. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time is not sufficient to constitute him a transient. If he lives in (the United States) *a foreign country or countries* and has no definite intention as to his stay, he is a resident. One who goes to (the United States) *a foreign country or countries* for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the (alien) *citizen*, makes his home temporarily (in the United States) *abroad* he becomes a *foreign* resident, though it may be his intention at all times to return to his domicile (abroad) *in the United States* when the purpose for which he (came) *left the United States*, has been consummated or abandoned. * * *' "

[11] "[T]he term 'bona fide' residence abroad has been construed quite strictly with the result that many persons who have gone abroad to work even for a relatively long period of time have been unable to meet the test of a 'bona fide resident' of a foreign country. Sometimes this has occurred because the nature of the individual's work is such as to make it difficult to establish a 'residence' in the more widely accepted use of the term." S. Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 53.

The petitioner has established that he was engaged in fishing operations conducted from a base in Paita, Peru, from June 7, 1953, until January 1957. These operations were conducted under permits issued by the Peruvian Government, in accordance with Peruvian regulations, subject to Peruvian supervision. As required by that country, 80 per cent of the crew of the ship petitioner captained was composed of Peruvian citizens. Petitioner was required by the Peruvian Government to surrender his ship's papers and his passport, and to conduct operations and travel under Peruvian papers. He maintained a room in a hotel in Paita in which he kept his personal effects and in which he stayed when his presence was not required on board the vessel. Petitioner's wife and daughter, whose residence was in San Diego, California, visited with him for a period of 70 days during 1954, of which they spent 24 days on board the vessel with petitioner and the remainder in the hotel in which petitioner maintained a room. Undoubtedly, petitioner's wife and daughter continued to reside in San Diego throughout the years 1953 and 1954. It is doubtless true that petitioner could have been a resident of Peru in those years and his wife and daughter could have continued to reside in San Diego.

One does not have to change his domicile to change his residence. *Herman Frederick Baehre*, 15 T.C. 236. In that case, we said: "Petitioner does not contend that he changed his domicile or had any intention of doing so; however, a change of domicile is not necessary to come within the provisions of section 116(a)(1) [the same as section 911(a)(1), I.R.C. 1954]." We held that during the period in question Baehre had become a bona fide resident of Canada. However, in the *Baehre* case the facts show that soon after he went to Canada he gave up his residence in the United States, took his furniture and possessions there; also, his wife came and they rented a residence in Canada and lived there until sometime in 1944, when they returned to the United States. We have no comparable facts in the instant case. Petitioner, we think, has failed completely to show that he was subjected to any greater burdens or responsibilities than those to which a transient or sojourning fishing captain would have been subjected. He has shown no social or economic contacts with Peru which a nonresident captain could not show. In short, he has shown little or nothing more than mere presence in Peru as the captain of an operating fishing vessel during the taxable years in question.

We conclude, therefore, that petitioner has failed to prove by a preponderance of the evidence that he was a bona fide resident of Peru for the taxable year 1954, and sustain respondent's determination that his income earned in Peru is not excludible from gross income under section 911(a)(1). Cf. *Downs* v. *Commissioner, supra.*

The third issue presented is whether respondent correctly determined additions to the tax for the taxable years here involved under

section 294(d)(1)(A) of the 1939 Code [12] for failure to file a declaration of estimated tax and under section 294(d)(2) for substantial underestimation of estimated tax. It is stipulated that petitioner did not file a declaration of estimated tax for either year here involved. In the consideration of this issue as to section 294(d)(1)(A) additions to tax, it is important to inquire who were required to file a declaration of estimated tax in 1953 and 1954. Section 58, I.R.C. 1939, as applicable to petitioner's taxable years reads, in part, as follows:

SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.

(a) REQUIREMENT OF DECLARATION.—Every individual * * * shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—

(1) his gross income from wages * * * can reasonably be expected to exceed the sum of $4,500 plus $600 with respect to each exemption provided in section 25(b) ; or

(2) his gross income from sources other than wages * * * can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more.

Petitioner contends that in failing so to file, he relied upon the advice of a licensed public accountant that no estimate was required of him. We are unable to find that the accountant gave such advice; the accountant did not testify. Petitioner testified only that the accountant told him that if he should remain in Peru for 510 days during a period of 18 months he would not have to pay taxes on income earned there. There is no testimony that the accountant told petitioner he would not have to estimate his tax. We do not find, therefore, that petitioner failed to file estimates because he relied upon the advice of a competent adviser. Even if it be assumed that petitioner was entirely ignorant of the requirements for filing declarations of estimated tax, that fact would not establish reasonable cause for failure to file declaration of estimated tax. See *Walter M. Joyce*, 25 T.C. 13; *Andre Picard*, 28 T.C. 955. In the latter case, we said:

That ignorance of the law does not amount to reasonable cause, for the purposes herein, has previously been considered and decided by this Court contrary to the contention of the petitioners, and their contention is likewise denied here. *Walter M. Joyce*, 25 T.C. 13. * * *

Petitioner further contends that he was justified in failing to file estimations because it was impossible for him to know his income

---

[12] SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT.

(d) ESTIMATED TAX.—

(1) FAILURE TO FILE DECLARATION OR PAY INSTALLMENT OF ESTIMATED TAX.—

(A) Failure to File Declaration.—In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. * * *

until he received a statement of income from Sun-Pacific, Inc., following the completion of the calendar year's business operations. Petitioner, as captain of a fishing vessel, knew the size of his catches and he knew that he was to be paid a captain's share. Petitioner's wife was authorized to draw $300 per month against his earnings and petitioner made further drawings in Peru against his earnings. Those earnings in fact amounted to a little more than $11,000 in 1953 and almost $20,000 in 1954. While it is true that petitioner, as part owner of the vessel, might and did suffer a deductible loss from the vessel's operations, this loss would serve to reduce petitioner's tax but not his gross income, which is the yardstick by which a taxpayer judges whether he must file an estimate under section 58 of the 1939 Code (now section 6015 of the 1954 Code). Additionally, petitioner received other income in an amount slightly in excess of $2,000 in 1953 and of $3,000 in 1954. With gross income of approximately $13,000 in 1953 and $22,000 in 1954, we cannot conclude that petitioner could not reasonably expect that his gross income would exceed the minimum requirements of section 58.

Respondent has determined additions to the taxes of petitioner for both failure to estimate and substantial underestimation. Pursuant to the decision in *Commissioner* v. *Acker*, 361 U.S. 87, we hold that the addition for substantial underestimation may not be imposed where no declaration of estimate was filed.

We sustain respondent's determination of additions to taxes for failure to file declarations of estimated tax without reasonable cause and do not sustain additions for substantial underestimation.

*Decision will be entered under Rule 50.*