Dudley Y. Coyle v. Commissioner.
Coyle v. Commissioner
Docket No. 2214-67.
United States Tax Court
T.C. Memo 1969-53; 1969 Tax Ct. Memo LEXIS 244; 28 T.C.M. (CCH) 299; T.C.M. (RIA) 69053; March 17, 1969, Filed Sidney A. Soltz, Biscayne Bldg., Miami, Fla., for the petitioner. Frank B. Metcalf, for the respondent. 300 TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in petitioner's 1963 income tax of $4,144.68. We must decide whether petitioner established and maintained during the entire taxable year 1963 a bona fide residence in the Republic of Vietnam so that earned income received during 1963 from sources without the United States shall not be included in his gross income *245 and shall be exempt from income taxation under section 911(a)(1) of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated and are so found. Petitioner, Dudley Y. Coyle (hereinafter referred to as Dudley), a citizen of the United States, resided in Freeport, Grand Bahama Island, British West Indies, at the time he filed his petition herein. He filed his individual income tax return for the taxable year 1963 with the district director of internal revenue, Jacksonville, Florida. On November 26, 1962, Dudley was employed by Page Communications Engineers, Inc. (hereinafter referred to as Page), as a "Power Supervisor," in connection with Page's performance of its contract with the United States Air Force to furnish, among other things, power generating requirements to ten communications terminals in Southeast Asia, including terminals at Pleiku and Nha Trang, Vietnam and a terminal at Uban, Thailand. The term of Dudley's employment was stated to be the period of time required for completion of the work for which he *246 was hired subject to termination by either party upon two weeks' notice. The employment contract provided for the withholding of $50 from each biweekly wage pay until a reserve of $600 shall have been set aside as a "return transportation fund." This fund was to be used to pay for return transportation to the point of hire within the United States in the event of such return prior to the employee's acquiring "tenure," i.e., employment at the jobsite for 50 consecutive weeks. Once "tenure" was acquired and unless his employment was terminated for cause, an employee was qualified to receive an allowance for travel from the jobsite to the point of hire, in which event the "return transportation fund" would be returned to the employee. Page's contract with the United States Air Force was for a stated period of 1 year; it has been renewed from year to year and is still in effect. Pursuant to his employment contract, Dudley arrived in Saigon, Republic of Vietnam, on November 29, 1962. He was assigned from there to the communications site at Pleiku. On December 5, 1962, Dudley entered into a 1-year lease of a villa at Pleiku called Page Villa. Six months rent was paid in advance, after *247 which the rent was paid monthly. The villa had ten rooms, each of which was furnished with a bed, a mattress, a "saloon," and a wardrobe. Other than its being off-site, the location of Page Villa relative to Page's communications site is not disclosed by the record. Dudley's use of the villa and its occupancy during the term of his lease are not disclosed by the record. On November 13, 1963, Dudley left Vietnam to return to the United States. Before he left Pleiku he rented a house for three months for which he paid the rent in advance. Why he rented this house and the use to which it was put is not disclosed by the record. On January 2, 1964, Dudley entered into a new employment contract with Page, identical in its terms with the first contract. The point of hire was within the United States. On January 6, 1964, Dudley left the United States to travel to Page's Saigon office where he was to receive his assignment to a communications site. When he arrived he was assigned to the communications site at Nha Trang, Vietnam. He entered into a lease for a villa. This lease was terminable upon one week's notice by the lessee. The record does not disclose how many rooms were contained *248 in this villa, nor the nature of the living accommodations occupied by Dudley. The record does not disclose whether this villa was occupied exclusively by him. Dudley lived in this villa until July 1964, when he leased two rooms of a nearby house. These rooms were leased to "Mr. and Mrs. Dudley Y. Coyle, of American nationality" for a period of 12 months beginning August 1, 1964. The identity of "Mrs." Dudley Y. Coyle is not disclosed by the record. Dudley had been divorced from his American wife sometime in 1962. Under 301 the above leases, Dudley paid his own utility bills including the taxes imposed upon his use of the utilities. The record does not disclose whether Dudley ever purchased furnishings for any of the above-described living quarters. Dudley continued to be employed by Page until February 1965, when he left Vietnam. He is presently living in Freeport, Grand Bahama Island, British West Indies, where he has been employed by Pan American World Airways since June 1, 1965. Dudley originally entered the Republic of Vietnam under his United States passport and a 3-month visa issued by the Republic of Vietnam. He then obtained a residency card which would permit him *249 to remain for a year, and which was renewable thereafter from year to year. Under its contract with Page, the United States was obligated to provide Page's employees with all identification and clearance papers necessary for Page to perform its contract. An identification card, obtained through military channels, was furnished Dudley. This card conferred an equivalent rank of major; in the event of his capture by enemy forces this rank would prevent him from being executed as a spy and would entitle him to be treated as an officer during any detention. While at the worksite, which was under the joint supervision of the military command and the civilian contractor, Dudley was to be accorded, insofar as possible, all the benefits and privileges of a commissioned officer. He was also given PX privileges and medical services at military bases. The PX privileges entitled him to purchase goods at any United States commissaries or post exchanges free of any taxes or duties. Dudley was required to comply with all laws and regulations, both civil and military, applicable at the site where he worked. The United States Government was under a contractual obligation to provide air evacuation *250 in the event of medical emergency. Under his employment contract with Page, Dudley was required to use board and lodging at the site to which he would be assigned, if available. No board and lodging was available at the sites to which he was assigned. He used the living accommodations, above-described, off those sites. Page paid him a subsistence and quarters allowance for the expense of living off the site. Dudley possessed a Walther pistol for which he obtained a permit from the Vietnamese authorities. He bought a motorcycle and a scooter and obtained a Vietnamese driver's license. Dudley was friendly with some Vietnamese nationals. He spoke very limited Vietnamese, and could read only a few words of that language. At some unspecified time during his stay in Vietnam he became "engaged" to a native-born Vietnamese. In November 1964, he purchased real property in Vietnam upon which he has paid taxes. Because the United States Government as well as Page frowned upon war profiteering by American citizens, this property was purchased in the name of his fiancee. The purpose for which this property was purchased, the use to which it has been put, its cost, the amount of the taxes Dudley *251 paid and the time for which these taxes were paid are facts which are not disclosed by the record. Dudley testified he still "owns" this property and that he is still "engaged" to the Vietnamese woman. Whether he has continued to pay taxes on this property since his departure from Vietnam is not disclosed by the record. Whether his "fiancee," in whose name the property is held, is still alive, her whereabouts and whether she and Dudley have corresponded with each other since he left Vietnam are facts which are not disclosed by the record. Dudley has not returned to Vietnam since February 1965. Page withheld Dudley's Federal income tax for 1963. On his 1963 return, Dudley claimed his salary from Page was exempt from taxation under section 911(a), I.R.C. 1954, because he was a bona fide resident of the Republic of Vietnam during 1963. The Commissioner has determined that Dudley was not a bona fide resident of Vietnam and determined a deficiency of $4,144.68, against which Dudley is credited with $2,164.47, the amount of his withholding. The net additional tax of $1,980.21 results from the Commissioner's disallowance of Dudley's claimed exemption of his daughter, *252 Sharon Denise Coyle, and the Commissioner's determination of additional compensation of $1,954.50, representing the cost of living allowance Dudley was paid by Page. Petitioner has conceded the dependency exemption issue, and the issue relative to the cost of living allowance depends on our decision as to whether petitioner was or was not a bona fide resident of Vietnam. Opinion The only issue for our decision is whether Dudley was a bona fide resident of Vietnam during 1963. 302 Section 911(a)(1), I.R.C. 1954, provides that an individual citizen of the United States may exclude from his gross income, and shall be exempt from taxation thereon, amounts of earned income received from sources outside the United States, if he establishes to the satisfaction of the Secretary of the Treasury, or his delegate (the Commissioner), that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year. The statute itself does not define the term "bona fide resident." The history of the various legislative enactments leading to the 1942 amendment presently before us, together with the appropriate *253 Treasury regulations drawn thereunder have been the subject of frequent judicial analysis which need not be expanded upon here. See particularly Arthur J. H. Johnson, 7 T.C. 1040 (1946). Section 1.911-2(a)(2), Income Tax Regs., provides: What constitutes bona fide residence. Though the period of bona fide foreign residence must be continuous and uninterrupted, once bona fide residence in a foreign country or countries has been established, temporary visits to the United States or elsewhere on vacation or business trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country. Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined by the application, to the extent feasible, of the principles of section 871 and the regulations thereunder, relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual. Residence is defined in section 1.871-2(b) of the regulations: An alien actually present in the United States who is not a mere transient or sojourner is a resident of *254 the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. Whether Dudley established a bona fide residence in the Republic of Vietnam is essentially a fact question, Donald H. Nelson, 30 T.C. 1151 (1958), *255 to the determination of which the courts have considered numerous factors relevant, including the following: the intention of the taxpayer with regard to the length and nature of his stay in the foreign country; his establishment of a home temporarily in the foreign country for an indefinite period; his participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment; his physical presence in the foreign country consistent with his employment; the nature, extent and reasons for temporary absences from his temporary foreign home; his assumption of economic burdens and payment of taxes to the foreign country; his status of resident contrasted to that of transient or sojourner; treatment accorded his income tax by his employer; his marital status and residence of his family; the nature and duration of his employment - whether his assignment abroad could be promptly accomplished within a definite or specified time; and whether taxpayer moved abroad for the purpose of evading tax. The evidence in this case relates to one or more of these listed factors. We *256 have examined the "war worker" cases, relied upon by the Commissioner, in which the courts have consistently rejected a claim of bona fide residence. Typical of these is Downs v. Commissioner, 166 F. 2d 504 (C.A. 9, 1948), affirming 7 T.C. 1053. These cases deal with persons who went abroad for some specific purpose incident to a war effort. Many of them left families in the United States. The duration of their employment abroad was limited by contract or by the duration of the war. Limited visas also generally restricted their activity abroad both in nature and duration to the specific purpose they went to accomplish. Most of these persons worked and lived on military 303 bases. Their movements were severely circumscribed by wartime regulations. While there are similarities between this and the "war worker" cases, there are significant differences, too. Accordingly, we do not rely on those cases. Instead, we resort to the usual approach and we have evaluated all relevant factors. Upon evaluation of all the evidence, we are of the opinion that Dudley did not establish a bona fide residence in Vietnam in or prior to 1963. The evidence relating to Dudley's *257 intentions as to the nature and duration of his stay in Vietnam does not persuade us that he intended to remain in Vietnam indefinitely. His employment related to Page's performance of a specific contract with the Air Force. While that contract was not one that could be promptly performed, and while Dudley's employment in Vietnam was not inherently of short duration, this does not mean Dudley intended to remain in Vietnam indefinitely. The crucial time with respect to that intention is January 1, 1963; Dudley must have established a bona fide residence as of that date, and must have maintained it during the entire taxable year. Dudley traveled to Vietnam pursuant to his employment contract. The point of hire was within the United States. He had never been to Vietnam at the time he entered into his contract. The contract provided for the withholding of $50 from each biweekly wage pay until a reserve of $600 shall have been set aside as a "return transportation fund." This fund would be used to pay his transportation to the United States in the event of such return prior to his acquiring "tenure," i.e., employment at the jobsite for 50 consecutive weeks. An employee who has acquired *258 "tenure," and whose employment has not been terminated for cause, is qualified to receive an allowance for travel from the jobsite to the point of hire, in which event the "return transportation fund" is returned to the employee. Dudley was continuously employed at the jobsite in Pleiku from early December 1962 until November 13, 1963. Page paid his transportation expenses for his return to the United States at that time. We think that Dudley, as of the time he arrived in Vietnam, intended definitely to remain there for at least the 50 weeks that would give him "tenure" and return transportation to the United States. We are not persuaded that, as of January 1963, he had any intentions in regard to whether he would return to Vietnam after returning to the United States upon completion of his first "stint." Indeed, when he did return to Saigon in January 1964, after his return to the United States, it was pursuant to a new contract with Page. Under this contract he could have been assigned to the communications site at Uban, Thailand. Presumably, he was required to establish "tenure" under this contract. We note that in fact he worked under this contract for approximately a year, the *259 time required to establish tenure, and then left Vietnam for good. In other words, instead of arriving in Vietnam with the intention to remain there indefinitely, we think Dudley was employed for two "stints," each under a separate employment agreement, and that he definitely intended not to stay more than temporarily. He cannot, in these circumstances, be said to have had "no definite intention as to his stay." Arthur J. H. Johnson, supra, at page 1049. Nor do we think Dudley established in 1963 a home in Vietnam for an indefinite period. His lease of Page Villa was for a period of a year. This villa, with ten rooms equipped each with bed and bath, was not peculiarly suited as a single residence. If, in fact, Dudley used only one of these rooms for his personal living quarters, then without evidence of his furnishing these quarters or of facilities for the preparation of meals, we think he lived as a transient. There is no evidence that Dudley participated in community activities, or even that he shared any community of interest with the local people. While he may have been acquainted with Vietnamese nationals, so does a mere tourist make friendly acquaintance with *260 resident persons. We think Dudley identified with the people he worked with at the site. Dudley's income was not subject to Vietnamese income taxation. He was, in practical effect, exempt from local excise tax on consumables by virtue of his PX privileges. Page withheld his Federal income tax. Section 911(a) was enacted for the purpose of relieving United States citizens who are bona fide residents of foreign countries of the hardship of paying duplicate income taxes. Arthur J. H. Johnson, supra.That purpose could not be accomplished in the setting of this or similar cases. We hold petitioner was not a bona fide resident of a foreign country in 1963 within the meaning of section 911. Decision will be entered for the Commissioner. 304 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩